VAUGHN, Defendant in Error, v. TRACY, Plaintiff in Error.

1. Possession of real property under an unrecorded deed is not, as a matter of law, *actual notice* to a subsequent purchaser, within the meaning of our registry act.
2. But a majority of the court are of opinion that it is *evidence* of notice, to be submitted to a jury.
3. The *actual notice* required by the registry act is not *certain knowledge,* but such information as men generally act upon in the transactions of life.

### Error to Osage Circuit Court.

This was an action to recover the possession and obtain the legal title to one acre of ground upon which was a horse grist-mill.

At the trial before the court, without a jury, the plaintiff, Vaughn, read in evidence articles of agreement, under seal,

between himself and William R. Huckstep, dated March 3, 1845, by which the latter obligated himself, upon the payment of a certain sum, to convey to the former eighty acres of land. This agreement was not acknowledged, but was recorded on the 18th of September, 1846.   It recited that one acre of the tract, "whereon the mill now stands," had been previously sold by Huckstep to Vaughn for the sum of sixty dollars.

The defendant, Tracy, claimed title under a deed from Huckstep dated February 13, 1852, conveying eighty acres, including the acre in controversy, duly acknowledged and recorded.

At the trial, it appeared that plaintiff was in possession of the mill at the date of the deed to the defendant, and had been for some six or seven years previous, but was afterwards ousted by the defendant.

The court below gave the following declarations on motion of the defendant :

1. If the defendant, without notice of any adverse title or possession of the land in controversy, purchased the same *bona fide* and for a valuable consideration from Huckstep, and Huckstep executed and acknowledged a deed therefor to defendant, and the same has been recorded in the recorder's office of Osage county, the verdict ought to be for the defendant.

2. Although plaintiff may have been in possession of the land in controversy, and may have had a title bond or instrument in writing under seal, acknowledging the payment for said land from Huckstep, yet the plaintiff could not recover in this action, unless it appears that the instrument of writing read in evidence was duly acknowledged and recorded prior to the record of the defendant's deed, unless it appears from the evidence that defendant had actual notice of the plaintiff's title at the time of the defendant's purchase and payment for said land.

The following declaration asked by the defendant was refused :

3. The possession of the plaintiff can not affect the defendant's title unless the defendant had actual knowledge of such

possession at the time of the execution of his deed or the payment of the purchase money.

The court found a verdict for the plaintiff, and gave a judgment for the possession and vesting in him the legal title.

No finding of facts appears in the record.

*Parsons*, for plaintiff in error. 1. The instrument of writing between Huckstep and Vaughn was inadmissible. It was not acknowledged, and consequently could not legally be admitted to record, so as to give constructive notice of title. Nor was it shown that Tracy, prior to his purchase and reception of the deed from Huckstep, had any knowledge of the existence of such an instrument. (R. C. 1845, tit. Conveyances, § 42, p. 226 ; Popham v. Baldwin, 2 Jones, Exch. 320.) 2. The third instruction of defendant should have been given. Bare possession, without any other evidence, direct or circumstantial, is not notice of title. (8 Mo. 19, 149; ib. 303 ; 14 Serg. & Raw. 333 ; 1 Hare, 52 ; 3 Paine, 421, and authorities there cited.)

*J. W. Morrow*, for defendant in error, that actual possession was notice to all the world of title, cited 4 Mo. 62 ; 4 N. Hamp. 404; 2 Verm. 544 ; 1 Littell, 350 ; 4 Dana, 264 ; 4 B. Monroe, 466 ; Landes v. Brant, 10 How. U. S. R. 348 ; 7 Watts, 384; 16 Ves. 249.

LEONARD, Judge, delivered the opinion of the court.

The question made by this case is, whether possession of real property under an unregistered deed, is actual notice to a subsequent purchaser, within the meaning of our registry acts.

In order that we may put a correct interpretation upon these words, it may not be improper to refer to the state of the law upon this subject when the act was passed. The words of the lawgiver tacitly refer to the circumstances by which he is surrounded, and we must read them in connection with those circumstances, in order to put a sensible construction upon them. After courts of equity had established their jurisdiction in enforcing the specific performance of contracts for the purchase

of real property, they did not content themselves with administering a mere personal equity against the seller, but went yet further, and recognized not only the personal obligation on the part of the seller to transfer the legal title, but an interest in the buyer in the land sold, constituting an equitable ownership on his part, as contradistinguished from the legal ownership which remained in the seller. When, therefore, a contest arose between these two species of ownership for superiority, the courts laid down the principle that the latter should give way to the former, except in the hands of a purchaser for value without notice. The effect of this was, that a valid contract of purchase bound not only the seller, but also the land—not only in the hands of himself and of his heirs, and voluntary grantees, but also in the hands of a purchaser for value, whose conscience was affected by notice of the existing equitable right of the first purchaser. Now as it is a rule not only of morals, but also of public policy, that every one should use his own property, and conduct his own affairs, with proper prudence, so as not to hurt his neighbor, and that those who should fail to do so ought to answer for any damage they might occasion, the courts held that the equitable ownership should prevail, not only against a purchaser with *actual notice*, but also against one who bought under such circumstances *as would have afforded him notice had he used proper care in making the purchase*, and the distinction was thus made in English equity between *actual* and *implied notice*. The former was actual knowledge or information ; and the latter, facts and circumstances, not amounting to knowledge or information, from which the law *conclusively presumed notice*, and which it would not allow to be contradicted by contrary evidence. Actual notice, like any other fact, might be proved by direct evidence, or inferred from the facts and circumstances of the transaction ; but however proved, whether by direct evidence, or inferred from other facts, it was *actual notice*, and clearly distinguishable from *implied notice*, which was the notice the law imputed to a party under certain circumstances, and which it would not

allow to be contradicted, no matter how the fact might be; in other words, implied notice seems to be a "*presumptio juris et jure*," grounded upon the facts and circumstances relied upon for that purpose. (2 Sug. on Vendors, 278 ; Plumbe v. Flintt, 2 Anst. 438 ; Kennedy v. Green, 3 My. & K. and 2 Lead. cases in Eq. 99.) We remark here, that in England it was always held to be a want of proper care to buy from one out of possession, without inquiring into the cause of it, and an averment that the seller was in possession was essential in a plea of a purchase for a valuable consideration without notice. (Jackson v. Rowe, 4 Russ. 514, and cases there referred to.) And, therefore, if the land sold were in the occupation of another, and the buyer neglected to inquire into the title of the possessor, the law, from this circumstance, conclusively imputed to him notice of whatever title the party in possession had, because, if he had inquired, as it was considered his duty to have done, he would have obtained this information, and all injury to the party would have been avoided. When the registry acts first came under the consideration of the English court of equity, they applied their own principles to them ; and while they admitted that the legal title was bound by the words of the statute, and that the unregistered deed was therefore void at law as against the subsequent registered deed, they held that, if the second purchaser bought with notice of the prior sale, so that his conscience was affected, the land, the sale of which was sufficiently shown by the unregistered deed, became bound in equity in his hands, and thus the unregistered deed finally prevailed over the subsequent registered deed with notice, by the aid of the court of chancery ; and the court, at the same time, applied to the case their own doctrine of *implied notice*, at least whenever the facts and circumstances were so gross as to affect the purchaser with fraud, and a purchase from one of land in the possession of another was always considered of that character. (Le Neve v. Le Neve, 3 Atk. 646.)

The first registry acts in America merely declared the unregistered deed void ; in the New England states, generally,

without specifying the persons in whose favor they were to be void; but in New York, against subsequent *bona fide* purchasers only. In New England, where there was no distinct system of equity, the law courts, by an equitable construction of the statute, declared an unregistered deed to be void *only against* persons subsequently taking a specific interest in the land for value, *without notice*, and, in this manner, furnished relief to a party holding under an unregistered deed, similar to the relief given by English equity.

In New York, under their statute, the question, who are *bona fide* purchasers? became a question of law, and the rules of English equity in reference to *actual and implied notice*, became rules of law, and were administered in the law courts. (Tuttle v. Jackson, 6 Wend. 213.) In recent revisions of their statute law, several of the states have incorporated this principle of equity into their registry laws, by declaring " that any unregistered deed shall not be valid, except against a party with notice ;" and in the Massachusetts and Maine revised statutes, the expression is " actual notice."

Our original act, passed in October, 1804, (1 Terr. Laws, 46,) declared, " that the unrecorded deed should be void against a subsequent purchaser for a valuable consideration ;" but in the revision, in 1825, the provision was, that it should not be binding " except between the parties and such as have *actual notice*," and it has so continued ever since ; and now the question is, as already stated, whether possession is actual notice within the meaning of the act ? We think the legislature here referred to *actual notice*, as contradistinguished from *implied* notice, both of which were well known terms in our law when the act was passed; and we all concur in reversing the present judgment upon the ground that possession is not, as the Circuit Court seemed to suppose, as a mere matter of law, *actual notice* within the meaning of our recording acts. The case must, therefore, be remanded to be retried, and we defer, until all the circumstances of the transaction shall be developed upon this new trial, our opinion upon the question how far

Vaughn v. Tracy.

and under what circumstances the fact of the open and noto-
rious possession and apparent ownership of real property is to
be considered evidence of *actual notice*, so as to bring a sec-
ond purchaser within the provision of the statute, and to avoid
his deed as far as it may conflict with the prior unrecorded
deed under which this possession is held.

Speaking alone for myself, I may be allowed to state my
present views of the subject, without, however, committing my-
self to any settled opinion. In all the states, under the re-
cording acts, as they were originally expressed, possession was
always considered either as implied notice of the unregistered
deed, not to be contradicted, or as evidence of the fact of no-
tice, to be submitted to the triers of the fact, and which might
therefore be met and repelled by contrary evidence. It has,
however, been recently held in Massachusetts, (Pomeroy v.
Stevens, 11 Mass. 244,) that possession is not evidence of no-
tice to be submitted to the jury, without other evidence showing
that the party against whom it is offered knew or imputed such
possession to a title in fee, or some higher right than that of
mere occupancy, although the previous decisions, both in Mas-
sachusetts and Maine, seemed to be that the statute had not
changed the existing law, but only incorporated in it the prin-
ciple previously acted upon (Curtis v. Mundy, 3 Mass.
405); and there can be no doubt but that, previously, posses-
sion in both these states had always been considered at least
competent evidence to go to a jury upon the question whether
the party had notice of a prior deed. (Per Wilde, justice, in
McMehan v. Griffing, 3 Pick. 155; Matthews v. Demerit, 22
Maine, 312.) Actual notice, under the statute, is a fact, and
of course may be proved as any fact; and as men rarely pur-
chase houses to live in, or improved farms to reside upon, with-
out a personal examination, when it is within their power, it
seems to me that the fact of possession may, under ordinary
circumstances, be fairly presumed to have been within the pur-
chaser's knowledge at the time he bought. The notice required
by the statute is not certain knowledge, but such information as

men generally act upon in the transactions of life. (Curtis v. Mundy, 3 Met. 405.) And, in our state, where the land is generally in the occupation of the owners in fee, it would seem that, if knowledge is brought home to the purchaser that a third person is in the possession and apparent ownership of the land, it ought, under ordinary circumstances, to be deemed sufficient information to the second purchaser that the possessor is the owner in fee, under a title derived from the former owner. It is true, the circumstances may be such as to show conclusively that the purchaser did not, in fact, know that any one was in possession, or if he did know it, the possessor may have disclaimed the ownership ; and, in such cases, the jury, of course, could not find the fact of actual notice. It is quite a mistake to suppose, because the statute requires actual notice, that therefore it can only be proved by direct evidence. The *actual notice*, the fact to be proved, is the matter prescribed by the statute ; the competency of the evidence is another thing to be settled by the courts, according to the ordinary rules of evidence ; and the sufficiency of the evidence to establish the fact, is yet another question, which is submitted to the jury and must be passed upon by them.

The judgment is reversed, and the cause remanded.

RYLAND, Judge. I concur in the views of Judge Leonard, set forth in the above opinion ; as well in reversing the judgment as in his individual views.

SCOTT, Judge. For my views on this question, I refer to the case of Beattie v. Butler, (21 Mo. 313.)