HARRISON, Appellant, v. CACHELIN, *et al.,* Respondents.

1. Adverse possession, to constitute a bar under the statute of limitations, must be uninterrupted.
2. The Supreme Court will reverse judgments of the lower courts and award new trials, without regard to the number of new trials previously granted, wherever erroneous instructions have been given to the jury.
3. A., by mistake, conveyed to B. whiteacre instead of blackacre ; *held,* that a *bona fide* purchaser for value, from B., without notice of the mistake, would acquire a good title as against A. and those claiming under him. A purchaser, without notice of the mistake, at a sheriff's sale on execution under a judgment against B., would be protected under this rule.

*Appeal from St. Louis Land Court.*

This was an action in the nature of an action of ejectment, commenced in the St. Louis Land Court, on the 30th day of January, 1854, for the possession of the *south-west* quarter of block No. 18, in Eiler's survey of the former town (now city) of Carondelet, against Constant Cachelin, a tenant of the other defendants. After the commencement of the suit, the other defendants, on their own motion, were made parties.

The defendants, in their answer, deny the right of the plaintiff to the possession of the property ; and state that they, and those under whom they claim, were in the adverse possession of

the premises for twenty years prior to the commencement of the suit; that on the 2d day of June, 1834, the board of trustees of the town (now city) of Carondelet, claiming to own the legal title to said premises, did, by ordinance of that date, passed by authority of an act of the legislature, approved February 13th, 1833, ordain " that every person who shall have been in possession of any lot in said town, and shall have cultivated the same, being an inhabitant, and having so been possessed prior to 1832, shall be entitled to a deed in fee simple for the same ;" said ordinance making it the duty of the chairman of said board to execute such deed as the respective claimants should be entitled to ; that the defendants, Leon Levy and Nicholas Levy, and those under whom they claim, were included in the provisions of said ordinance ; that on the 4th day of May, 1835, the board, by their chairman, did execute to William Carr Lane a deed, purporting to convey to him, among other property, the premises set out in the petition, which, at the time of such conveyance, the defendants charge were the property of the defendants, and those under whom they claim, and for which the defendants were then entitled to a deed by virtue of said ordinance ; that on the 22d of August, 1840, the board, by resolution of that date, after reciting that " in 1835 the board of trustees deeded to said Lane the property aforesaid, and that it now appeared that one Leon Levy was entitled to the same property by right of settlement, and that in consequence of the claim of the representatives of said Levy, the said Lane had offered to reconvey said property to said town," authorized the chairman to make a deed to said Lane for the north-east quarter of block lettered C, in exchange for said property ; that in pursuance of this resolution, the chairman, on the 22d day of January, 1841, did convey to said Lane the said north-east quarter of block lettered C, and in exchange for the property set up in plaintiff's petition ; that on the 22d day of April, 1841, said Lane, in pursuance of the resolution, did convey to the said town (now city) the *north-west* quarter of block 18, which adjoins the premises sued for ; that the property intended

to be conveyed in said last mentioned deed by Lane, was and is the *south-west* quarter of the block, being the premises sued for ; that the description of said *north-west* quarter, in said deed, was and is a mistake, and was intended to describe the said *south-west* quarter mentioned in the petition ; that the plaintiff had notice of all the aforesaid facts before and at the time he acquired any title or claim to the same ; that on the 2d day of March, 1854, the city of Carondelet, in pursuance of an ordinance, approved February 15th, 1854, did convey, by quit claim deed, all of the right and title of said city in the premises described in the petition, to Leon Levy and Nicholas Levy, two of the defendants, and that the title to said premises is in the said Leon Levy and Nicholas Levy.

On trial, it was admitted by the parties that the premises in controversy are a part of the common of Carondelet, confirmed by the act of congress of the 13th of June, 1812 ; and that the defendants were in possession of the premises in controversy at the time of the commencement of this suit, and still are in the possession of the same.

The plaintiff then read in evidence a deed from the corporate authorities of the former town of Carondelet, to William Carr Lane, dated May 4th, 1835, and recorded January 20th, 1836, conveying to said Lane the premises in controversy.

The plaintiff then read in evidence a transcript of the record containing the judgment, execution, return thereon, and pro- ceedings, of the Circuit Court of St. Louis county, in a case wherein Charles Ames was plaintiff, and William Carr Lane was defendant. The judgment is dated November 3d, 1844, and the execution is dated November 13th, 1849. The plaintiff then read in evidence a deed for the premises in controversy from William Carr Lane, by the sheriff of St. Louis county, to the plaintiff, dated December 13th, 1849, and recorded Decem- ber 21st, 1849. This last deed was by virtue of a sale under said execution, which took place on the 12th day of December, 1849.

It was admitted by the parties that the former town of Ca-

rondelet was incorporated by the county court of St. Louis county, on the 2d day of August, 1832, and that the legislature did, on the 13th day of February, 1833, pass a law authorizing the corporate authorities of said town to sell the premises in question among other real estate therein named. The plaintiff only claimed nominal damages, and here rested his case.

The defendants then proposed evidence to sustain that part of the answer which relates to the alleged mistakes in conveying the premises in controversy to said Lane, and the plaintiffs objected to the introduction of any evidence of the kind proposed by the defendants as aforesaid ; which objection was overruled ; exceptions were duly taken by the plaintiff.

William Carr Lane was then called by the defendants as a witness, who says : "I bought, at the first sale of Carondelet commons, a lot outside of the limits of the town—three quarters of block 18 ; ground selected for me by Eiler. I bought a large amount ; some time afterwards the town notified me that they had conveyed to me one-fourth of a block that belonged to some one else. I said there would be no difficulty ; a deed was sent to me. I bought north-west, south-east and south-west quarters of block 18. I do not recollect what was the description of the quarter they said they had conveyed to me by mistake ; they stated that it belonged to some one besides myself. I do not recollect who it was. They may have stated which quarter, but I do not remember which it was. I do not remember whether I saw any member of the board. It was a written communication, and I answered it. They then sent a deed for the quarter in block C, in exchange for what I conveyed. I executed the deed they sent, without seeing whether it corresponded or not. I do not know from whom I received it ; but it was sent by authority of Carondelet." The plaintiff objected to the admission of this testimony ; the objection was overruled. Plaintiff duly excepted.

The defendants then read in evidence the various ordinances, resolutions, deeds, conveyances and other instruments referred to in their answer, which were all objected to by the plaintiff,

and the objection overruled by the court, and the decision of the court excepted to by the plaintiff. The deed from William Carr Lane, (conveying the *north-west* quarter of block 18,) dated April 22d, 1841, to the town — or rather to Joseph Le Blond, chairman—was not recorded until March 11th, 1852 ; the deed from the town to Lane, dated January 2d, 1841, was recorded December 15th, 1849 ; the deed from Carondelet to Leon Levy and Nicholas Levy, of March 4th, 1854, was recorded on the same day.

The defendants then introduced evidence tending to show that the premises had been in their possession, and those under whom they claim, from about the year 1832 to the year 1844, (excepting a few short intervals,) and also tending to show that there was once a house on the lot, but it fell to pieces and was carried away before 1844 ; and the flood of 1844 washed away all of the fences and other improvements ; and no one ever made any improvements on, or took possession of the lot, until some time in the year 1851, when a small house was erected on the lot, and Constant Cachelin occupied it as tenant for the Levy family ; but that the lot was usually called the Levy lot, in the neighborhood, and the Levy family always said it was their lot.

The defendants then read in evidence a deed from one Simon Busha and wife, to Leon Levy, sr., dated April 7th, 1837, and recorded April 29th, 1837, conveying to Levy said lot. Plaintiffs objected to the admission of this deed ; the objection was overruled ; plaintiffs duly excepted.

The court gave the following instructions :

" 1. Unless the defendants show a deed to their property executed by the city of Carondelet, for the piece of land sued for, he has no paper title that can avail him as against the plaintiff."

" 2. If the jury believe from the evidence in this cause, that the deed offered in evidence by the plaintiff, dated the 4th day of May, 1835, and purporting to have been executed by Peter J. Shoultz, chairman of the board of trustees, within and for

the town of Carondelet, to William Carr Lane, properly describes the land sued for ; and that the deed also offered in evidence by the plaintiff, dated December 13th, 1849, purporting to have been executed by Louis T. Labeaume, sheriff of St. Louis county, properly describes the land sued for, they will find for the plaintiff, unless they find from the evidence that the defendants, and those under whom they claim, have had a continuous and uninterrupted adverse possession of the land for twenty years consecutively before the bringing of this suit ; and, unless the jury find from the evidence, under other instructions given herewith, that said lot was conveyed by the city of Carondelet to Lane, by mistake, and that Lane tried to re-convey it by deed, but failed to do so by mistake."

" 3. If the jury find from the evidence, that the city of Carondelet, in making of the deed of conveyance to William Carr Lane, of May 4th, 1835, conveyed to said Lane the lot in question, being the south-west quarter of block No. 18, by mistake and error ; and if they also find that the said city and said Lane both acknowledged the said error and mistake, and attempted to correct the same, the city, by conveying to Lane other property of equal value ; and Lane, by attempting to re-convey the lot in question to said city by the deed in evidence of April 22d, 1841, and that the said last mentioned deed was really intended to re-convey to said city the south-west quarter of block No. 18, but by mistake and error conveyed the north-west quarter of block No. 18, then the jury is instructed that the sheriff's deed to Harrison, the plaintiff, of December 13th, 1849, did not operate to convey to said plaintiff any legal or available title to said lot, as against these defendants."

" 4. If the jury believe from the evidence, that the defendants, and those under whom they claim, have had open and visible possession of the premises in dispute, adverse to the title of the plaintiff, for the period of twenty years next before the commencement of this suit, they will find for the defendants."

" 5. To constitute actual possession, it is not necessary that the possessor should live upon or be upon the land, or have the

same enclosed by a fence, or have houses or other buildings thereon. The actual possession, if proved to the satisfaction of the jury, is continued by a continual claim of right, and the exercise of the acts of ownership which proprietors do ordinarily exercise over the vacant or untenanted land, and such possession will continue until there is an actual adverse possession.''

Plaintiff duly excepted to the giving of these instructions.

The plaintiff asked the court to instruct the jury as follows :
"1. Adverse possession, to avail as a defence in this action, is thus defined by the court: If, under a deed or instrument of writing, purporting to convey the land, the grantee, or those under him—defendants being of such persons—had absolute possession of any portion of the tract or piece of land conveyed, claiming the whole for twenty years' uninterrupted and continuously next before this suit was brought ; or if, having been in absolute possession under a deed or conveyance, he continued to exercise ownership, openly and notoriously, by usual acts of owners, such as paying taxes, driving off trespassers, and claiming the land among and to those with whom he associates for twenty consecutive years uninterruptedly next before this suit was brought."

" 2. If there is no deed or instrument of writing in the chain of title to the land, whereby it is described and bounded, there can be no adverse possession that will avail the defendants, under the statute of limitations, unless there is proved uninterrupted, continuous and unbroken absolute possession of all the land in controversy, for the space of twenty years next before the bringing of this suit."

The court refused to give the above instructions, which refusal was duly excepted to by the plaintiff.

The jury found for the defendants, and judgment having been given for them, the plaintiff appealed to this court. A previous verdict of the jury, in favor of the defendants, had been set aside, on motion of plaintiff, and a new trial granted.

*Casselberry* and *W. L. Williams*, for appellant, cited

Jackson v. Halstead, 5 Cow. 219; Jackson v. Schoonmaker, 2 Johns. 230; Bailey v. Irley, 2 N. & Mc. 343; King v. Smith, 1 Rice, 10; Blood v. Wood, 1 Metc. 525; Doe v. Campbell, 10 Johns. 477; Proprietors of Kennebec Purchase v. Skinner, 4 Mass. 416; Kincaid v. Louge, 7 Mo. 166; Robinson v. Douglas, 2 Aik. Rep. 364; 4 Bibb, 544; 1 Marsh. 59, 506; 5 Litt. 22; 6 Serg. & Raw. 1; Abell v. Harris, 11 Gill & Jo. 371; Sorber v. Willing, 10 Watts, 142; Naglee v. Albright, 4 Whart. 291; Reily v. Chouquette, 18 Mo. 224.

*Primm & Romyn*, for respondent.

I. Under the practice act of 1845, only " *one* new trial shall be allowed to either party, except," &c. (R. C. 1845, tit. Practice at Law, art. 7, § 3, p. 830.) The practice act of 1849 in nowise changes the requisitions or the prohibitions of the act of 1845. (Sess. Acts, 1849, p. 87, art. 11, § 3.)

II. Two trials have been had in this cause, in each of which verdicts have been found for defendants. The whole scope of the decisions of the Supreme Court has been adverse to granting a revision of the judgments of courts below, predicated upon the repeated verdicts of juries. (See Hill v. Wilkins, 4 Mo. 86; Hill v. Deaver, 7 Mo. 57; Humbert v. Eckert, ib. 259.)

IV. The facts developed in this cause, upon the trial below, warranted the instructions given by the court, and justified the jury in rendering a verdict against the plaintiff.

SCOTT, Judge, delivered the opinion of the court.

1. The defendants rely on an adverse possession of such duration as gives them title against the plaintiff. There is nothing in the case which shows that they pretend to hold adversely to Carondelet. On the contrary, they look to her for a title; claim one from her as early as 1840, as appears from the face of the resolution passed during that year, and finally accept a deed from her. Now Carondelet owned the lot and retained the title until it was conveyed in May, 1835, to Wil-

liam Carr Lane, under whom the plaintiff claims. This suit was commenced January 30th, 1854. The statute then had not run against the title conveyed by Carondelet when this suit was instituted. The defendants accepted a title from Carondelet and used the deed conveying that title in this suit. How was their possession, then, adverse to that of Carondelet? Thus it would seem that both of the parties have, within a period short of the time necessary to create a bar by the statute of limitations, acknowledged Carondelet the rightful owner of the lot in controversy. We do not hereby intend to convey the idea that the defendants are estopped by any thing that has been done from setting up a title adverse to Carondelet, but merely to express the opinion, that, as the matter appears to us from the record, had the question of adverse possession, as against Carondelet, been submitted to the jury, they would have been warranted in finding a verdict against the defendants on that ground. But take it that the defendants claim to hold adversely to the title of Carondelet, and there is nothing detailed in the evidence which would warrant an instruction that would defeat the plaintiff. This may be a hard case, but hard cases must not be made a pretext for breaking down those principles of law on which repose the rights of the great body of the community. No landholder would be safe if the facts given in evidence in this cause should be deemed sufficient to give a right against him under the statute of limitations. The interruption in the possession, from the year 1844 till 1851, was such as to take away the force of all possession prior to 1851. If one trespasses on the land of another and afterwards voluntarily leaves the possession, shall a claim of right, subsequently persisted in and only evidenced by oral declarations, be available, under the statute of limitations, to take away the right of the legal owner?

2. As to the point that one new trial has been granted to the plaintiff, and that consequently, under the statute, he can not have another, reference is made to the case of Boyce's adm'r v. Smith's adm'r, (16 Mo. 317,) which maintains that, when a

new trial has been refused, the Supreme Court, on appeal or writ of error, will look into the record, and if it finds that incorrect instructions have been given to the jury, will reverse the judgment and award a new trial, without regard to the number of new trials previously granted to the appellant or plaintiff in error.

3. In the case of Vaughn v. Tracy, (22 Mo. 415,) it was decided that the fact of possession by another was not, of itself, notice under our law concerning conveyances to a subsequent purchaser, of any prior unrecorded deed held by the tenant in possession; that such possession, though not of itself evidence of a prior unrecorded deed, yet might go to the jury as evidence of the actual notice of such deed, required by the statute, in order to defeat a subsequent conveyance. Now the instruction given by the court, in relation to the mistake in the deeds, simply failed to apprise the jury that notice of such mistake must be in Harrison at the time he purchased at the sheriff's sale, in order to defeat his right of recovery. It is by an equity set up in the answer that the defendants seek to prevent a recovery by Harrison. If Harrison was a *bona fide* purchaser for a valuable consideration, without notice, courts of equity will give no relief against him. The legal title to the lot was in Lane, by mistake, it is true; yet, if, whilst it was in him, it was sold to a *bona fide* purchaser, the mistake can not be corrected at the expense of that purchaser. If Lane, himself, had sold the lot in dispute to a *bona fide* purchaser, his title, beyond all controversy, would have passed. The fact that the sale was made by an officer deputed for that purpose by law, seems to make no difference. The cases of Ells v. Tousley, (1 Paige Ch. 280,) and Gouverneur v. Titus, (6 Paige Ch. 251,) clearly show that, if a purchaser at a sheriff's sale is ignorant of the mistake in a deed of land conveyed to the debtor, he will take the title of the debtor, unaffected with the equity of the vendor to have the error corrected.

The judgment is reversed, and the cause remanded; the other judges concur.