————o————

WILLIAM C. MULDROW, Appellant, vs. DAVID M. ROBISON, Respondent.

1. *Evidence—Powers of attorney affecting land—Record of certified copies under ? 40 of act touching evidence—Notice—Secondary proof, etc.— Constr. Stat.*—The 40th section of the statute relating to evidence, providing that certified copies, taken from county records, of "any writing, instrument or deed purporting to affect any real estate or any right or interest in the same," may be used in evidence under certain circumstances, was intended to embrace powers of attorney for the conveyance of land. But under that statute the record of such instrument can impart notice, and certified copies can be used as secondary proof of the original, only as to land situated in the county where the power of attorney was recorded. But such copy may be read in

evidence to prove notice in fact, where the party is shown to be in possession of facts such as would have caused a man of ordinary prudence to examine the records where the instrument had been recorded.

2. *Evidence—Notice, actual, question of fact*—The question of actual notice is one of fact, and to be determined like any other fact.

3. *Evidence—Notice—Facts which put on inquiry.*—One will be held to have notice of facts which would have been ascertained by a man of ordinary prudence and diligence.

*Appeal from Shelby Circuit Court.*

*Anderson & Boulware with Manville & Burlingame,* for Appellant.

I. The language in section 40, (Wagn. Stat., 596) to-wit: "Any writing, instrument or deed, purporting to affect any real estate or any right or interest in or to the same," is descriptive of an instrument which of its own force operates either in law or in equity on the title, and does not include within its terms any other. (Patterson vs. Fagan, 38 Mo., 83.) A naked or common power of attorney is not such an instrument. The extent of its operation is the appointment of an agent, and it is revocable at the pleasure of the principal; it is revoked *eo instanti* by his death. Said section 40 is "*in pari materia*" with the Recording Act and should be construed as part thereof. Upon this rule rests the construction given to said section by this court in Garrison vs. Barry, (28 Mo., 449, 450). The language used in section 24 of the Recording Act (Wagn. Stat., 277), "Every instrument in writing, whereby any real estate may be affected in law or equity," is of the same import as that used in said section 40 of the act concerning evidence. That the language used in said section 24 of the Recording Act was not understood or intended by the legislature to include common powers or letters of attorney, is made manifest by the fact that special provision is made for letters of attorney in section 27 immediately thereafter following; and by the further fact, that by the very language of said section 27, "Every instrument whereby real estate may be affected in law or equity," is placed in manifest contradistinction to

" Every letter of attorney or other instrument containing a power to convey real estate as agent or attorney."

.The proposition that sections 24, 25, and 26 of the Recording Act were not intended to embrace common powers of attorney, is further strengthened by the consideration that said sections were first adopted in Revised Code of 1835, (§ 30 *et seq.*, p. 123) in lieu of section 13 *et seq.* of Revised Code of 1825, p. 221, and that said section 21 of the Recording Act, (R. S. 1865) was first adopted in Revised Code of 1835, in lieu and place of section 15 of R. C. 1825, p. 221. In the Code of 1825 the instruments, for the recording of which provision is made, are specifically named, and each one operates either in law or in equity by its own force upon the title.

In place of the specific enumeration of instruments as in Code of 1825, we now have in said section 24 general language descriptive of the same instruments. The same remark is true with reference to the relation sustained by section 27 of the present law to said section 15 of the Code of 1825. Sections 29 and 30 of the present Recording Acts can apply to powers of attorney in one state of facts only, and that is where the power of attorney is made part of the deed, and as such recorded with it.

. II. If it should be held that section 40 embraces powers of attorney within its terms then said section is to be construed in connection with sections 24, 25 and 26 of said Recording Act, and as operating only on records made in compliance therewith. (Garrison vs. Barry, 28 Mo., 449.) Said section 40 applies to the record of the county where the land is situated.

III. Open and notorious possession of land is not notice, to subsequent purchasers, of the occupant's title, even if knowledge of such possession be brought home to such purchaser. . If the purchaser had knowledge of such possession, it may be, that from that fact a presumption of notice will arise. Even then it is a presumption of fact, and not of law, and like all other presumptions of fact may be rebutted by showing the truth. It may also be that the fact of open and

notorious possession will raise the presumption (of fact) that the purchaser had knowledge of such possession. If this be true, it is also true that this presumption may be rebutted. The possession, to have any force as evidence tending to prove actual notice, must be an open and notorious possession. (Vaughn vs. Tracy, 22 Mo., 417; Vaughn vs. Tracy, 25 Mo., 320; Beattie vs. Butler, 21 Mo., 313; Maupin vs. Emmons, 47 Mo., 304.) In this case there was no such possession.

IV. Neither the recording of the alleged power of attorney from William Muldrow to John Muldrow, in Marion county, nor the recording in Shelby county of the alleged deed from William Muldrow by John Muldrow to Gray, operated to give plaintiff constructive notice of the alleged title of defendant.

*Manville & Burlingame*, for Appellant.

I. The copy offered is not a transcript from the records at Shelby county, in which the land is situated, (Wagn. Stat., 277, §§ 24, 27, 30) and its admission was not authorized by law. It is not a transcript of a record in the meaning of the statute. No such paper spread upon the books is a record, except as to lands in the county in which it is recorded. (Gwynn vs. Frazier, 33 Mo., 90.)

II. The existence of an executed original had not been proved. "The best evidence of which the case is susceptible, must be produced," and secondary evidence of the contents of a deed "was inadmissible without proof of the previous existence and loss of the deed." (Smith vs. Phillips, 25 Mo., 557; Gould vs. Trowbridge, 32 Mo., 293; Atwell vs. Lynch, 39 Mo., 519; Dail vs. Moore, 51 Mo., 590; Briggs vs. Henderson, 49 Mo., 533.)

III. But even if defendant had produced in evidence the original power of attorney, of which the paper offered purports to be a copy, he must fail in his defense, under the provisions of the registry law, for want of legal notice. (Wagn. Stat., 277, §§ 24, 26, 27; Thornton vs. Miskimmon, 48 Mo., 223; Bowman vs. Lee, *Id.*, 336; Terrell vs. Andrew County, 44 Mo., 312; Aubuchon vs. Bender 44 Mo., 564; Youngblood vs. Vastine, 46 Mo., 243.)

IV. Section 27, page 277 of Wagner's Statutes, places letters of attorney upon the same footing with "other instruments of writing, conveying or affecting real estate." The original power of attorney not having been recorded, the question arises, did plaintiff have "actual notice thereof." The burden of proof of the fact of notice rested on the defendant.

V. There is no evidence that plaintiff had notice of any of the facts given in evidence, and relied on as proof of notice; but a knowledge of these facts brought home to plaintiff would not constitute actual notice. Plaintiff had no knowledge of any fact that would prompt him to inquire about the title to the land.

VI. By giving instruction No. 3 and refusing No. 1, the court virtually declared, that the power of attorney might be " properly recorded." without being recorded in the county in which the real estate to be affected thereby is situate. This would render nugatory section 24 of the Registry Act.

*J. C. Hale,* for Respondent.

I. The certified copy of Marion Co. record of power of attorney of William Muldrow to John Muldrow and the deed made thereunder to M. L. Gray was properly admitted in evidence, it being shown by the testimony of the plaintiff, that William Muldrow (the father and grantor of plaintiff) was, at the time of the record of said power of attorney in Marion county, residing on, and claiming as his own, certain lands in Marion county; and it being further shown that the said original power of attorney was beyond the reach and control of defendant, and that he, defendant, through his agents and attorney had made necessary effort to obtain. same. (Wagn. Stat., ch. 54, § 40, Ed. 1872.)

II. The whole question here turns upon the power of John Muldrow to convey, and upon the notice plaintiff had of defendant's claim under such power; and the certified copy is *prima facie* evidence of the execution of said instrument. Plaintiff might have introduced testimony to show that

original was never executed, or that the copy offered in evidence was not a true copy. (Wagn. Stat., § 34, ch. 54.)

III. Proof of actual knowledge is not necessary, but the jury may infer it from knowledge of facts that naturally suggest it. (47 Mo., 304.) Notice is actual where the purchaser either knows of the existence of the adverse claim or title, or is conscious of having the means of knowing, although he may not use them. (40 Mo., 405; 48 Mo., 219–222–3; 35 Mo., 71.)

IV. Possession is not actual notice as a matter of law, but is competent to go to the jury, on which, if satisfied, they may find actual notice. (22 Mo., 415; 25 Mo., 318; 3 Washb. Real Prop., 283–4.) If the plaintiff bought the lands in dispute with a knowledge of his father's former transactions in sale of lands in north-east Missouri, and with the fact staring him in the face that defendant had told him that M. L. Gray of St. Louis owned them, he had sufficient notice to put him on his inquiry, and if he bought without further inquiry he bought with actual notice. (4 Mo., 62–66.)

*M. L. Gray*, for Respondent.

I. The deed of Wm. Muldrow (by John Muldrow, his attorney in fact,) and his wife to M. L. Gray, was so executed and acknowledged as to entitle it to be recorded. (Wagn. Stat., pp. 273, 274, 275, §§ 7, 9, 13, 24.) By section 29 of same act it was entitled to be read in evidence.

II. The deed of Wm. Muldrow to M. L. Gray was notice to all the world of its contents. (Wagn. Stat., p. 277, § 25; 10 Mo., 34; 47 Mo., 374.)

III. The action of the court in admitting the certified copy of the power of attorney from Wm. to John Muldrow was correct. A deed purporting to be the deed of Wm. Muldrow by John Muldrow, claiming to be his attorney in fact, had been recorded in 1850. And of this deed plaintiff had full notice; *i. e.* the fact of its acknowledgment and record was, as we have shown, notice to him of its contents. In the certificate of the acknowledgment of said deed, the clerk states

he knows that John Muldrow is attorney in fact of Wm. Muldrow from a power of attorney recorded in his office in Marion county, Missouri. This statement was equivalent to a reference to the book and page in Marion County Records, where said power of attorney could be found. Now, if the officer, in his certificate, had referred to the book and page of the record in Marion County, Missouri, where the power of attorney was recorded, would that not have affected plaintiff with notice of it?

IV. But the action of the court in admitting the certified copy of the power of attorney, is to be viewed entirely independent of any question of notice to plaintiff. Plaintiff had notice by law of the deed of Wm. Muldrow by John Muldrow, recorded in Shelby county in 1850, and thereby had notice that it was claimed that a power of attorney existed. To give operation to the deed of William Muldrow by John Muldrow, attorney in fact, it was only necessary to prove that John Muldrow had authority to make that deed. If he had authority to make it the deed was the deed of Wm. Muldrow against all the world. That John Muldrow had authority to make this deed in the name of William Muldrow to M. L. Gray was just the fact, and the only further fact that defendant needed to prove to show an older and better title in himself from Wm. Muldrow than in plaintiff. If he could have produced the original power of attorney from Wm. to John Muldrow, though it had never been recorded anywhere, he would have shown the necessary authority in John Muldrow to make the deed of 19th June, 1850, and thereby, made said deed binding and operative. Defendant could not produce the original, but he showed searches for it in Marion county, Missouri, where Wm. Muldrow resided when he made it; and in Ralls county where the attorney resided at the date of it, he showed a further search among the papers of the deceased, John Muldrow, etc., and thereby proved his inability to produce it. This entitled the defendant to introduce a certified copy of the power of attorney. (Wagn. Stat., p. 278, § 30 of act concerning Conveyances.)

V. This copy was as competent from the records of Marion county, Mo., as from the records of Shelby county, Missouri. The proof shows that in 1849, (Feb'y) when the power of att'y was executed, Wm. Muldrow lived and owned lands in Marion county. Its recording there was then legal and proper. The power of attorney was an authority to convey Wm. Muldrow's lands anywhere in Missouri.

NAPTON, Judge, delivered the opinion of the court.

This was an action of ejectment to recover a quarter section of land in Shelby county.

On the trial the plaintiff read in evidence a patent for the land in controversy, from the U. S. to Wm. Muldrow, dated Nov. 2, 1837, and a deed from Wm. Muldrow to himself, dated Oct. 4, 1872, and proved the possession of the defendant.

The defendant then read in evidence a deed to the same land from M. L. Gray and wife to himself, dated August 12, 1872. The defendant then offered to read a deed from Wm. Muldrow, by John Muldrow, his attorney in fact, to M. L. Gray, dated 19 June, 1850. The certificate of acknowledgment on said deed was made by the clerk of the Circuit Court of Marion county. This certificate was in the usual form, and contained the additional statement that "said John Muldrow was not only known to the officer to be the person who executed the deed, but also as the agent and attorney in fact of Wm. Muldrow, by virtue of a power of attorney, duly recorded in his office, and who acknowledged that he executed and delivered the foregoing instrument of writing, and declared it to be his act and deed, as the attorney in fact of Wm. Muldrow." This acknowledgment was dated also on the 19th of June, 1850.

There was also a certificate of acknowledgment of the wife of Wm. Muldrow, taken on the 12th of July, 1850, which is in due form and certified to by the same officer, the clerk of Marion county, at his office in Palmyra. This deed, thus acknowledged, was filed on the 17th of July, 1850, in the re-

corder's office of Shelby county, and the following is the certificate of the clerk: " State of Mo., County of Shelby, ss. I, William H. Vamort, clerk of the Circuit Court, and *ex officio* recorder, within and for the county of Shelby, aforesaid, hereby certify that the foregoing deed, together with the two certificates thereon, was received and filed for record on the 17th day of July, 1850, and that they have been duly recorded in my office in book E, for recording conveyances, etc., at pages 497, 498. Witness my hand, &c."

The defendant then offered in evidence an instrument purporting to be a certified copy from the records of Marion county, of a power of attorney from Wm. Muldrow together with the indorsements and certificates thereon which being objected to as secondary evidence, the court sustained the objection and excluded it, unless the absence of the original was accounted for, and unless there was evidence to show possession in the grantee, Gray, for more than ten years before this suit was brought, and proof was made that Wm. Muldrow, on the 23d of Feb., 1849, (the date of power of attorney) owned lands in the county of Marion, on which the instrument could operate.

Thereupon, the defendant read the deposition of M. L. Gray, his grantor, who stated that he had at all times since June, 1850, until his conveyance to defendant, claimed the land in dispute, under said instrument and the deed of Wm. Muldrow by John Muldrow, his attorney in fact; that he had caused the premises to be assessed to him and through his agents had paid the taxes from 1854 to 1871; that he had employed one Knox to keep off trespassers up to 1866, and afterwards Mr. Hale.

Defendant also produced and read in evidence the tax receipts, admitted to be genuine, signed by the collector of Shelby county, showing the payment of taxes by Mr. Gray, as stated.

The agent, Hale, was then introduced as a witness, who stated that he had searched for the original power of attorney; that he ascertained that John Muldrow had been dead

many years, and one George Muldrow was his administrator; that he applied to said Geo. Muldrow, and at his request Geo. Muldrow and witness searched among the papers of the estate for said power of attorney, but it could not be found; that the witness then applied to the recorder of deeds of Marion county, and also of Ralls county, and their offices were searched by said recorders and by witnesses, without success, and witness had applied to various other persons, but failed to find this paper.

The defendant then introduced the plaintiff as a witness, who stated that he was the son of Wm. Muldrow; that in February, 1849, his father lived in Philadelphia. a town or village in Marion county, in a brick house; had been in possession of the house and lot several years, also cultivated lands in the vicinity which he claimed to own, and also claimed title to some timbered land in the neighborhood, from which he got his firewood, and claimed several other tracts of land in Marion county.

This witness further stated, that, in March or April 1872, he was at the defendant's house, whose farm adjoins the premises in dispute; that on that occasion defendant told the witness that the tract in dispute belonged to Mr. Gray of St. Louis; that his father conveyed the said tract to himself in Oct. of that year in satisfaction of a debt due witness for money loaned. Witness further stated, that at the time the deed was made to him he did not know that the tract described in it was the same land that the defendant had told him belonged to Mr. Gray; he discovered this afterwards. Witness further stated, that when he bought the land from his father, he had not examined the title of the land, and did not know that Mr. Gray or any one else claimed it. All this testimony was objected to, and exceptions duly taken to its admission.

The court then admitted the copy of the power of attorney and the certificate thereon to be read in evidence. The power of attorney is in the usual form, authorizing John Muldrow, as his—William's—attorney in fact, to grant, bargain and sell any of his lands in the State of Missouri. The

acknowledgment and certificate are also in the usual form, made by the clerk of the Circuit Court of Marion county, and dated 23d Feb., 1849.

This was all the evidence in the case, and thereupon the plaintiff asked the following instructions: 1. Unless the power of attorney from Wm. Muldrow to John Muldrow, by virtue of which Jno. Muldrow executed the deed to Melvin L. Gray, was recorded in Shelby county, a deed made pursuant to said power of attorney cannot avail against the plaintiff, unless plaintiff, at the time of his purchase, had actual notice of the existence of such power of attorney. 2. The patent and deed of Wm. Muldrow to plaintiff, vested title in plaintiff, and the deeds read in evidence by defendant are not sufficient in law to show title in defendant to the premises in dispute. 3. The facts of the payment of taxes on the land, and that defendant went on the land and cut out a fence row on the south side of the land, and put up a fence, under his deed from Gray, cannot amount to notice to plaintiff, unless a knowledge of such facts came to plaintiff prior to the execution of the deed to him from Wm. Muldrow. 4. The certified copy from the records of Marion county of the power of attorney from Wm. Muldrow to John Muldrow, purporting to be from the recorder's office in Marion county, Missouri, is no evidence of the previous existence of an executed original. 5. The facts stated by the witness (plaintiff) introduced by defendant, do not constitute such notice to plaintiff of the execution by Wm. Muldrow to John Muldrow of the alleged power of attorney, an alleged copy of which has been read in evidence, nor of the execution by Wm. Muldrow of the deed to Gray, as to prevent the plaintiff's recovery in this action. 6. The instrument read in evidence by the defendant, purporting to be a copy from the record in Marion county of an instrument purporting to be a power of attorney executed by William Muldrow to John Muldrow, is not legal or competent testimony in this cause, and ought not to be considered in determining the question whether William Muldrow executed the deed read in evidence to M. L. Gray. 7. Although

the court, sitting as a jury, may believe from the evidence in this case, that plaintiff, prior to his purchase of the land in controversy from Wm. Muldrow, casually inquired of a person, whom he met, as to the ownership of a certain tract of land then in view, and was informed by said person that said tract of land belonged to Gray; and although the court may believe that the person to whom such inquiry was addressed was the defendant, Robison, and that the tract of land concerning which such inquiry was made and such information given, was the land in controversy in this suit; yet if the court should further believe from the evidence, that at the time of purchasing the land in controversy, plaintiff did not know and had no reason to believe that the land thus purchased, and in the deed to him described, was the tract of land formerly pointed out to him by defendant as belonging to Gray, and did not know that any person other than Wm. Muldrow claimed to own said land, then the facts above set out do not constitute actual notice, or any notice to plaintiff of the alleged power of attorney from Wm. Muldrow to John Muldrow, or of the alleged deed of Wm. Muldrow by John Muldrow to Gray.

The above instructions were all refused, but the court gave the following instructions for the plaintiff: " 1. The patent from the U. S. to Wm. Muldrow and the deed to W. C. Muldrow, the plaintiff, are *prima facie*, in the absence of other testimony, sufficient to establish the plaintiff's right to the land in the petition described. 2. Although the court may be of opinion that the deeds read in evidence by defendant show in defendant a fee simple title to the premises in dispute, yet if it appears from the evidence that plaintiff, in October, 1872, purchased said premises from Wm. Muldrow for a valuable consideration, and recorded his deed therefor, defendant is estopped from setting up his title to said premises, as against plaintiff, unless it further appear that plaintiff, at the time of his purchase, had actual notice of the claim of defendant and his grantor to said premises.

4. " There is no evidence in the cause tending to prove that defendant or those under whom he claims had any actual possession of the premises in dispute prior to Aug., 1872, and the issue on the statute of limitations should be found for plaintiff. 5. No conveyance of the land in controversy by Wm. Muldrow, prior to his conveyance of said land to Wm. C. Muldrow (plaintiff), is valid against the plaintiff, unless plaintiff had actual notice of such prior conveyance, or the same had been properly recorded."

The court gave for the defendant the following instruction : "The deeds read in evidence by the defendant, show the title to the premises in the defendant, and if it appears from the evidence that plaintiff at the time he purchased and accepted his deed, had actual notice of the claim of title by defendant or his grantor, M. L. Gray, to the premises, the plaintiff is not entitled to recover."

The court found the issue for defendant. The usual motions for a new trial were made and overruled, and the case was brought here by appeal. ·

It will appear from the above statement in which the instructions given and refused have been copied as explanatory of the points decided, and all the material testimony admitted has been also stated, almost in the language of the bill of exceptions, that the case mainly depended on the admissibility of the copy of the power of attorney, and on the question of actual or constructive notice.

The court below manifestly held ; first, that the copy of the record in Marion county was admissible ; second, that there was no constructive notice, and third, that there was actual notice. And the propriety of these conclusions we will proceed to consider.

The admissibility of the record copy of the power of attorney, from the records of the Marion Co. Recorder's office, is defended on two grounds, first, that the 30th section of our statute concerning conveyances, etc., authorized its admission, upon the proof therein required, and next, that it was admissible under the 40th section of our statute concerning evidence.

The 30th section of the act concerning conveyances (1 Wagn. Stat., 278) must be read in connection with the 29th, and both have reference to the five sections immediately preceding.

The 29th section provides, that "every instrument in writing, conveying or affecting real estate, which shall be acknowledged or proved and certified, as hereinbefore prescribed, may, together with the certificate of acknowledgment, or proof of relinquishment, be read in evidence without further proof."

The 30th section provides, that "where any such instrument is acknowledged or proved, certified and recorded, in the manner herein prescribed, and it shall be shown to the court, by the oath or affidavit of the party wishing to use the same, or of any one knowing the fact, that such instrument is lost, or not within the power of the party wishing to use the same, the record thereof, certified by the recorder under the seal of his office, may be read in evidence without further proof."

The 31st section provides that the evidence shall only be *prima facie* and the other party is allowed to rebut it.

It is clear that the 29th and 30th sections refer not only to deeds, but to any other instrument of writing affecting real estate, and that a power of attorney is regarded as such an instrument is manifest from the 27th and 28th sections which require such instruments to be recorded, and declare that their revocation must be established in the same manner. But these provisions all require powers of attorney to be proved, certified and recorded as other instruments of writing, conveying or affecting real estate, are required to be recorded.

The 24th section shows how this is to be done: it provides, that "every instrument in writing that conveys any real estate, or whereby any real estate may be affected in law or equity, proved or acknowledged and certified in the manner hereinbefore prescribed, shall be recorded in the office of the recorder of the county, in which such real estate is situated."

Conceding that the 29th and, consequently, the 30th sections embrace both deeds and powers of attorney, as we think they do, still the right to use the record in evidence under the circumstances named in the 30th section belongs only to cases where the deed or instrument has been recorded in pursuance of the previous provisions, and that is, in the county where the land supposed or sought to be affected by it is situated; and although the 30th section seems to have no bearing on the question of implied notice, and seems designed merely to authorize a specified kind of secondary evidence to be used in certain contingencies, and embraces as well such instruments as powers of attorney (provided they relate to land) as actual conveyances, yet the power of attorney from Wm. Muldrow to John Muldrow, being recorded in the county of Marion, and not in the county of Shelby where the land now in controversy was, is hardly within the purview of this action, as it was not recorded according to the anterior provisions of the act.

The 40th section of the act concerning evidence, like the 30th section in the law of conveyances, seems designed to provide a species of secondary evidence, and has no reference to the question of notice. Indeed it may be observed that those two statutes have mingled together in rather a confused way, various provisions adopted at intervals, some of which apply both to notice and secondary evidence, and others to the latter only. The 40th section evidently refers to the latter only, but is more general and comprehensive in its terms than the 30th section of the law concerning conveyances, and provides for the use of secondary evidence under other contingencies than those mentioned in the former. It provides that "whenever the records in the recorder's office of deeds of any county shall contain a record of any writing, instrument or deed, purporting to affect any real estate or any right or interest in or to the same, and such real estate, right or interest in or to the same shall have been claimed or enjoyed by any person, by or through such writing, instrument or deed, for a period of ten consecutive years, such writing, instrument or

deed and a certified copy thereof and of the time of its record, shall be *prima facie* evidence of the execution of such writing, instrument or deed, and of its genuineness and time of record, provided the said record shall have been made at least ten years next before such writing, instrument or deed, or certified copy thereof, is offered in evidence."

Now it is insisted that the words in this section, "writing, instrument or deed purporting to affect any real estate, or any right or interest in the same," do not include letters of attorney, or any instrument containing a mere power to convey or otherwise affect real estate, because the 24th section of the conveyance act uses terms equally broad and comprehensive with the terms used in the 40th section ; and yet the 27th and 28th sections were deemed necessary to provide separately and expressly for letters of attorney. And this separation of the two classes of instruments, one conveying and the other giving a mere power to convey, has continued from the revision of 1825, down to the present time, as an examination of these various revisions will undoubtedly show.

But when we recur to the act of 1825, (Rev. Code of 1825, p. 222,) we find that after the particular enumeration of grants, bargains, sales, leases, releases, mortgages, defeasances, covenants, conveyances, bonds, etc., in section 14, and a definite provision for powers or letters of attorney in section 15, the 16th section, like the 29th, 30th, 31st and 32nd sections of the revision of 1865, embraces both conveyances and letters of attorney, since it is therein declared, that "every deed, conveyance or other writing of or concerning any lands, tenements or hereditaments, which by virtue of this act shall be required or entitled to be recorded as aforesaid, being acknowledged or proved, according to the provisions of this act, whether the same be recorded or not, may be read in evidence without any further proof of the execution thereof, and if it shall appear to the satisfaction of the court that the original deed so acknowledged is lost, etc.," then the record copy is allowed.

It is clear that this section included letters of attorney, giving authority to convey lands, since it applies to all instruments which by that act were authorized to be recorded, and letters of attorney were not only authorized, but required to be recorded; and this same provision contained in the 16th section of the acts of 1825, is virtually embodied in the 45th, 46th, 47th and 48th sections of the revision of 1855, (p. 365) and is in substance repeated in the 29th, 30th, 31st and 32nd sections of the present law. Not one of these provisions had any reference to notice, from the revision of 1825 down to the present. But it is plain that they embraced letters of attorney, as well as instruments conveying title.

When we come to the 58th section of the code of 1855, (p. 733) which is the first introduction of the provisions of section 40 in the revision of 1865 into the statute book, we find another provision in regard to secondary evidence, in a class of cases not provided for in the 30th section of the conveyancing act. It manifestly comprehends, as did the former, both letters of attorney giving authority to convey and conveyances themselves.

Considering this proposition clear, that the 40th section embraces both classes of writings referred to, the question still remains, whether each class of instruments must not have been recorded in the mode prescribed in the 30th section of the act concerning conveyances, in other words, whether it applies to instruments not recorded in the county where the land affected by it is situated.

So far as conveyances or powers of attorney to convey land in one county alone are concerned, there is no difficulty presented by this question, as it is manifest, that where a conveyance, or power of attorney to authorize it, is recorded only in a county where the land is not situated, it is not recorded according to law, and is mere waste paper. But in regard to a power of attorney, such as the present, which authorized the attorney to convey the grantor's lands lying in any county in the State, it might properly be recorded in any county where he had lands to be conveyed; and as the proof shows that

Wm. Muldrow had various tracts of land in Marion county, the power of attorney was properly recorded there.

The subject of notice is provided for in other sections of the act concerning conveyances.

In regard to deeds conveying land or letters of attorney accompanying them, the declaration of this section, that the record shall be *prima facie* proof of the original, and of its genuineness and of its time of record, was, most likely, merely for the purpose of showing that it had been recorded more than ten years before it was offered in evidence. The only object of the section was to provide a way of letting in secondary evidence of the deed.

When once admitted in evidence, the 25th section of the act concerning conveyances provides when it shall impart notice.

Whether this section 40 was designed to make this power of attorney, properly recorded as it was in Marion county, notice of a deed executed under it to a tract of land in Shelby county, is a question which may be promptly answered in the negative. Such a construction would conflict with the general intent of all our recording acts. But it still remains to be determined, whether this record of a power of attorney in Marion county, properly and legally placed on record there, may not be used under this provision in the statute concerning evidence, as secondary proof of the original, just as the original, if in existence, could have been used.

There is no doubt that the defendant could have used the original power of attorney, without which his recorded deed showed no title, but that power of attorney and deed would have been no more evidence against the plaintiff, than if the grantee had put both of them in his pocket on the day of their delivery, and kept them there for the twenty years intervening before the execution of the second deed to plaintiff, so far as implied notice is concerned.

But the deed and power of attorney would show title in the defendant's grantee at its date, and would be valid as between him and the grantor to him, and all others who might

purchase with actual notice. And secondary proof of this letter of attorney might have been made upon common law principles of evidence, without regard to any of the provisions of our statutes referred to; and it is strange that so plain and undisputed a mode of proof was not resorted to in this case, where the certificate of the clerk of Marion shows that he took the acknowledgment of this instrument, was acquainted with the parties to it, and of course could readily have sworn to its contents literally.

But this section 40 was doubtless supposed to be designed to supersede the necessity of resorting to sworn testimony of the contents of an instrument, where there had been a claim for ten consecutive years, and where the record was made more than ten years before it was offered in evidence. Like section 30 of the conveyancing act, which had the same purpose in case of a lost instrument, this section provided for secondary evidence of an instrument which may not be lost, but where the claim under it has lasted ten consecutive years and the record is also more than ten years old, at the date of the trial.

The common law rules of evidence have an elasticity which enables courts somewhat to adapt them to the peculiar circumstances of a case, but in regard to the positive provisions of a statute, the courts have no such power to go beyond the words, or the equity of the words, to apply them to cases unprovided for.

We are unable to see any distinction between the 40th section of the law of evidence and the 30th section of the law of conveyances, so far as the subject matter is concerned on which those sections are to operate. They both embrace deeds and letters of attorney, and all other writings affecting real estate. The same rule that applies to one applies to the other. The general tenor and purport of all our recording acts is to require a paper which affects lands to be recorded in the county where that land lies. If recorded elsewhere, it amounts to nothing so far as that land is concerned. We cannot make one rule for a deed and another for a power of

attorney, upon which that deed is based. The statutes nowhere make such discrimination, and the courts cannot legislate on the subject.

It is with reluctance we have reached this conclusion, because the case is a peculiar one, and we could see no good reason why the statute should not have provided for such a case. It is sufficient, however, for us to say, that the legislature, so far as we can see, have not done so.

The conclusion is, therefore, that the court erred in allowing the record of a power of attorney in Marion county to go in evidence to support a deed for land in Shelby county. In regard to the finding of the court on the question of actual notice, we see no reason for departing from that finding.

The question of actual notice is a question of fact, and as was decided by this court in Beattie vs. Butler (21 Mo., 328), is to be determined like any other fact. "Actual notice" observes Judge Scott, in that case, "does not require positive and certain knowledge, such as seeing the deed, but that is sufficient notice, if it be such as men usually act upon in the ordinary affairs of life." And Judge Leonard observed in Vaughn vs. Tracy (22 Mo., 418), "Now, as it is a rule not only of morals, but of public policy, that every one should use his own property and conduct his own affairs with proper prudence, so as not to hurt his neighbor, and that those who should fail to do so ought to answer for any damage they might occasion, the courts hold that the equitable ownership should prevail, not only against a purchaser with actual notice, but also against one who bought under such circumstances as would have afforded him notice, had he used proper care in making the purchase. And this distinction was thus made in English equity between actual and implied notice." And the conclusion of Judge Leonard was, that "the actual notice, the fact to be proved, is the matter prescribed by the statute; the competency of the evidence is another thing, to be settled by the courts, according to the ordinary rules of evidence, and the sufficiency of the evidence to establish the fact, is yet another question, which is submitted to the jury, and must be passed upon by them."

And in a late case, (Speck vs. Riggin, 40 Mo., 405,) Judge Wagner says, "notice may be either actual or constructive. It is actual when the purchaser either knows of the existence of the adverse claim or title, or is conscious of having the means of knowing, although he may not use them."

Now in this case the evidence shows that the plaintiff, when visiting the defendant, and pointing out the land he subsequently bought, and which he claims in this action, was told by the defendant that this identical land belonged to Mr. Gray of St. Louis. But the plaintiff explains this, and attempts to destroy this proof of actual notice, by saying that he did not know when he bought the land, that it was the same land pointed out to him as Gray's, and that he never examined the title papers or records.

Now, who is to take the risk of buying land, under such circumstances, the man who buys a tract of land, not knowing where it is, or to whom it belongs, whose deeds were duly recorded—though not so recorded as to impart constructive notice—or the subsequent purchaser?

It will be observed that the deed to this land from Wm. Muldrow to Gray was duly recorded in Shelby county, and the certificate of its acknowledgment also duly recorded, and that the certificate referred to a power of attorney, acknowledged before the clerk of Marion county, who made the certificate, and who declared that said power of attorney was duly executed and acknowledged before him and was recorded in his office.

The records of Shelby county are amply sufficient to put such purchaser on inquiry, and that he did not make any, was his own fault, and the record of the power of attorney in Marion county, though not admissible to prove the execution, as heretofore decided, was undoubtedly evidence on the question of notice, as well as the records of Shelby county. Though neither amounted to constructive notice, nor came within the provisions of our statute concerning secondary evidence, yet each was properly recorded, and legally recorded, in the two counties, and each was entitled to be read on the question of notice in fact.

There was also evidence of possession taken by defendant some months before plaintiff bought, and the construction of fences around the tract, but this was also unknown to the plaintiff, as he states, and there was no proof to the contrary.

Upon the whole there is no ground for reversing the judg-ment, because of the finding of the court sitting as a jury on the question of actual notice.

That was a question of fact, on which the evidence tended very strongly to show that the plaintiff was in possession of such facts and circumstances as would have required a man of ordinary prudence to examine the records, and if he chose not to do so, it was his own fault, and his purchase was made at his own risk.

But as the power of attorney was essential to show title in the defendant, and there was no legal proof of it, the judgment must be reversed and the case remanded.