·John Masterson, Appellant, *v.* West End Narrow-Gauge Railroad Company, Respondent.

### January 2, 1878.

1. Constructive notice of an outstanding title in land is the notice imparted by the registry. Direct and positive knowledge, and that knowledge inferred from facts which should induce inquiry, differ not in kind, but only in the

character of proof; both are actual notice. The conclusive presumption of notice which the law implies from certain facts has been called "implied notice." The question of actual notice is one for the jury.

2. The fact of notice cannot be arrived at as a direct inference from the bare fact of possession; but to charge the purchaser with actual notice there must be some evidence tending to show that at the time of his acquisition he had knowledge of such possession. One cannot be presumed to have actual notice because of a condition of things of which he knows nothing.

3. Where it is shown that grading had been commenced, but subsequently suspended, by a railroad company on a tract of land to which it had no record-title; and where the evidence as to the kind and quantity of grading was indefinite, and did not show that the grading indicated the purpose for which it was done: and where there was no evidence that the purchaser of the land knew of or suspected the existence of such grading; *held*, that there was no evidence to warrant a finding that the purchaser took with actual notice of the claim of the railroad to the land.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

LEVERETT BELL and W. B. THOMPSON, for appellant, cited : *Merrity* v. *Railroad Co.*, 12 Barb. 605 ; *Walker* v. *Railroad Co.*, 57 Mo. 275 ; *Evans* v. *Railroad Co.*, 64 Mo. 453.

CHANDLER & YOUNG, for respondent : Possession being taken of ground for a railroad under a verbal permission from the owner makes the dedication complete. — Wag. Stat. 326, sec. 1. The right taken by the railroad in the land is an easement. — *Kellogg* v. *Molin*, 50 Mo. 496. And may be given verbally. — *Seifert* v. *Withington*, 63 Mo. 577. Possession being sufficient to consummate dedication, no notice is necessary, every one being presumed to have notice of a highway. — *Patterson* v. *Arthers*, 9 Watts, 154. Where the original entry is legal, ejectment cannot be maintained. — *Hubbard* v. *Railroad Co.*, 63 Mo. 69 ; *McAubey* v. *Railroad Co.*, 33 Vern. 311; *Provolt* v. *Railroad Co.*, 57 Mo. 256. License to enter cannot be countermanded. — *Baker* v. *Railroad Co.*, 57 Mo. 272 ; *Hosher* v. *Railroad Co.*, 60 Mo. 329.

HAYDEN, J., delivered the opinion of the court.

This is an action of ejectment to recover a strip of land occupied, at the time the suit was brought, by the respondent as a road-bed for its railroad. Both parties claimed title under William T. Gay. The plaintiff read a deed of trust dated May 27, 1874, and recorded May 29, 1874, to himself from Gay, executed to secure a note for $29,000, payable in five years, and to secure ten semi-annual interest-notes. This deed included the land in dispute, and by sale under the power in it, the trustee's deed being dated June 8, 1875, and recorded the next day, the plaintiff acquired his title. The defendant's testimony tended to show that, in 1872, the St. Louis and Florissant Railroad Company, a corporation organized under the laws of Missouri, made surveys and located its road over the land in dispute, under oral permission from Gay; and that afterwards, and in 1873, Gay conveyed by deed the right of way to the railroad company. This deed was never recorded. On Sept. 19, 1874, Gay, by deed of that date, recorded on Sept. 24th, conveyed the right of way over these premises to the railroad company. No proceedings for condemnation were ever taken. For the purposes of this case, it may be assumed that the defendant succeeded to all the rights of the St. Louis and Florissant Railroad Company. The court below gave judgment for the defendant.

By the first section of chap. 66 of the General Statutes, it is provided that in case lands are sought to be appropriated by any railroad corporation, and such corporation and the owner cannot agree upon the compensation to be paid, proceedings for condemnation may be taken in the Circuit Court, etc. In chap. 63 of the General Statutes (Wag. Stat. 297, sec. 2), it is provided that every railroad corporation formed under that chapter shall have power to cause examination and survey for its proposed railroad to be made, etc., and for such purposes, by its agents, to enter upon the

lands or waters of any person, etc., to lay out its road and to construct the same, etc. There is no provision providing for a preliminary filing of a map of the route as a public record; and, consequently, none to the effect that such selection of a route, when followed by the act of filing, shall impart notice, etc. The mere survey and location of a route, of which a mortgagee has no notice, cannot, apart from any evidence of possession furnished by the appearance of the premises, affect the rights of such mortgagee. To him, such survey and location are merely a thing of the air; and the authorities cited by the respondent in regard to finished roads, occupied and used, or projected roads, the maps of which have been filed under statutory provisions which make the filing impart notice, have obviously no application here. Wag. Stat. 303, sec. 12 (repealed by act of March 24, 1870); *Id.* 315, sec. 59; *Id.* 311, sec. 44.

The question here involved lies in a narrow compass. It is simply whether the plaintiff had such notice of the claim of the St. Louis and Florissant Railroad Company to this land as constitutes what the statute concerning conveyances terms actual notice. It is immaterial that the respondent claims merely a right of way; it claims possession, and its right of way involves possession, and the present action is for possession. The respondent claims, not by virtue of condemnation or any public proceedings, but by license or conveyance, or both, from Gay. There was, at the time the appellant lent his money and took his deed of trust, no record evidence of the claim of the railroad company, as the license of Gay was by parol, and as the deed of 1873 was not recorded. Thus the immediate question became one of fact, — whether the plaintiff purchased with actual notice. A confusion arises in the term "actual notice," from the circumstance that this phrase is sometimes applied to denote positive knowledge of an outstanding equity, while constructive notice is employed to designate the circumstances which are sufficient to put a purchaser on

his guard, and which should have induced inquiry. But, properly speaking, constructive notice, under our law, is the notice imparted by the registry, while actual notice is that described by the statute : " Sec. 26. No such instrument in writing shall be valid, except between the parties thereto, and such as shall have actual notice thereof, until the same shall be deposited with the recorder for record." Wag. Stat. 277. The difference between the direct and positive knowledge of an outstanding title, and that knowledge which is inferred from facts which should induce inquiry, would seem, under the law that has grown up from our system of registry, to involve, not a difference in the kind of notice, but in the character of proof. The question of actual notice is a question for the jury. If the case shows that the purchaser, while treating for the property, receives notice of the outstanding title from the claimant, the evidence is direct ; if there is merely a variety of circumstances from which the notice might reasonably be inferred, the evidence is indirect. But there may be a conclusive presumption of notice which the law by implication raises from certain facts, and this is called by Judge Leonard implied notice. *Vaughn* v. *Tracy*, 22 Mo. 415.

Here there was no direct evidence tending to show that the plaintiff had any notice of the claim of the railroad company to the land, or to any right of way over it. While the plaintiff's testimony "tended to show that he never had actual notice, nor actual knowledge, nor actual information, that a railroad had been surveyed or located, or in part, or in any manner, constructed upon the premises," until May, 1875, the defendant's testimony tended to show that, in 1872, the company " surveyed and located its railroad upon the premises sued for, with the verbal permission of William T. Gay ;   *   *   *   that, in 1873, some grading was done by said company along the line of its railroad and upon premises sued for, but work was suspended in that year by reason of the panic ; and in December, 1874, the last work

done on the road by the St. Louis and Florissant Railroad Company was performed, and said corporation became insolvent," etc. The question is, whether, on this evidence as to actual notice, the finding of the court below can be sustained.

It is sometimes said that possession of a third person is sufficient to put a purchaser upon inquiry; but this is a somewhat loose expression of the rule. It is the character of the possession, and the facts and circumstances that surround it, that determine whether it constitutes actual notice. To authorize a jury to infer that the purchaser had actual notice, the possession must be open and notorious, and must be accompanied by some acts or marks which indicate continued occupancy. *Lyman* v. *Russell*, 45 Ill. 281. Mere casual use of the premises at times, or occasional entries for the removal of earth, stones, and for similar purposes, will not, in itself, charge a purchaser or mortgagee with notice of equities. *Williams* v. *Sprigg*, 6 Ohio St. 585; *Lessee of Billington* v. *Welsh*, 5 Binn. 129. "All the authorities agree," said the Supreme Court of Pennsylvania, in *Meehan* v. *Williams*, 48 Pa. St. 238, "that possession is not notice, except during its continuance, and that even when his vendor is out of possession, a vendee is not bound to take notice of the antecedent possession of third persons." The court there arrived at the conclusion, after reviewing many authorities, that the possession which affects a purchaser with notice must be clear, open, notorious, and unequivocal, and that an act done which may lead as well to an inference of trespass upon the lands is insufficient. In *Merritt* v. *Railroad Company*, 12 Barb. 605, which however, was a bill in equity to foreclose a mortgage, though the evidences of occupancy were much more marked than in the case at bar, the court came to the conclusion that there was no such possession as put the mortgagees upon inquiry. Yet there, as the railroad company had not only begun to excavate, but had placed stakes and had set posts,

the appearances probably indicated the purpose for which possession of the ground was taken, if nothing further.

Where, moreover, the evidence goes merely to the condition of the land, there should be some evidence tending to bring the knowledge of that condition home to the mortgagee. In other words, if from the condition of the land, or the fact that a third person is in possession, the mortgagee, if he knew of such condition or possession, would be charged with actual notice, still, if there is no evidence tending to show he had such knowledge, he cannot be charged with notice. The fact of notice cannot be arrived at as a direct inference from the bare fact of possession. As has been said, there are cases where the law conclusively presumes notice; but where the question is of actual notice under the statute, there must be some evidence tending to show that the purchaser or mortgagee, before or at the time of his acquisition, knew of the condition of things with which he is sought to be charged; otherwise, it is evident that a link in the chain is wanting.

Some cases which, if their mere expressions, apart from the context, were quoted, would seem authorities to the contrary of this proposition, are not so. Thus, it is said in *Shumate* v. *Reavis*, 49 Mo. 336 : " Possession, though not actual notice, is evidence of such notice, to be submitted to the jury. This is the settled law of this State." This remark is to be taken in connection with the fact that there was evidence in that case tending to bring home to the plaintiff knowledge of the possession spoken of. It is not necessary here to critically examine all the decisions of our Supreme Court upon this subject. Apart from the case of *Beatie* v. *Butler*, 21 Mo. 313, which has not been followed, so far as any rule has been laid down, it is to the effect that some evidence must exist tending to show that the purchaser had knowledge of the possession, in order to authorize the inference of actual notice. *Vaughn* v. *Tracy*, 22 Mo. 415 ; 25 Mo. 318. In *Speck* v. *Riggin*, 40 Mo. 405, the court

said, speaking of notice :  " It is actual where the purchaser either knows of the existence of the adverse claim or title, or is conscious of having the means of knowing, although he may not use them ; " and this is quoted approvingly in *Maupin* v. *Emmons*, 47 Mo. 307.   In this last-named case, the instruction given by the court below, to the effect that unless one of the plaintiffs had the information or knowledge brought home to him that the defendants were living on the specified lands, claiming title, the plaintiffs should recover, was not disapproved ; and accordingly this case, so far as it announces any doctrine on the subject, would seem to be authority for the position now assumed.    In *Fellows* v. *Wise*, 55 Mo. 415, the rule is stated that if a purchaser has such information as would put an ordinarily prudent man on inquiry, he is affected with notice ; and this, as well as the rule stated in *Speck* v. *Riggin*, *supra*, implies the existence of evidence tending to prove knowledge.

The fact that the statute uses the word " notice," and not " knowledge," does not warrant the violent presumption that a mortgageor has actual notice because of a condition of the premises of which he knows nothing.   Such a state of things, if notice at all, is plainly notice only by construction of law, which is not only not actual notice, but is the reverse of it. In a case, moreover, where the question is, on the one hand, between giving to the words of a statute their plain and decisive meaning, and on the other, whittling that meaning into nothing by the process of successive adjudications, considerations of public . policy may fairly have some weight. The registration system is a heavy tax upon the time and money of the citizen, and in doubtful cases a construction should be adopted that tends to make the system efficient.    There is no implication fairly to be raised from the words " actual notice," that every person who lends money upon real-estate security should visit the premises.    The policy of the law is to make parties record their deeds ; and where they fail to do so, it is carrying out the intent of the statute, as expressed in plain words, to

require the person who has disregarded it to introduce some evidence tending to show that the purchaser in good faith and for valuable consideration, who has observed its requirements, had knowledge of the facts which are claimed to be essential. To require this is not to require proof of actual knowledge, but to afford some basis for the otherwise unfounded conclusion of actual notice; in other words, to give its proper force to the significant word "actual."

Whether we consider, then, the character of the possession which must be shown, or the necessity of some evidence tending to bring knowledge of the facts relied upon home to the purchaser, we find two essential elements lacking, the absence of either of which would be fatal to the respondent's case. The evidence as to the kind and quantity of grading done on the land is indefinite, and it does not appear that the work was continued. Even if there were any thing to indicate to what extent the grading was done, or if it had been shown that the grading indicated the purpose for which it was performed, the work was suspended, and such evidences of occupation as are required by law did not exist. When it is added that the defendant introduced no evidence tending to show that the plaintiff saw the grading or suspected its existence, and that the plaintiff's testimony tended to show that he had neither actual knowledge that a railroad had been surveyed or located, or partly, or in any way, constructed upon the premises, until his first visit there, which took place in May, 1875, it must be said that, making every intendment in favor of the finding, there is, in legal contemplation, no evidence to support it. It would have been the duty of a court, upon a verdict so rendered, to set it aside as unsupported by evidence.

It is hardly necessary to observe that the case of *Provolt* v. *Railroad Company*, 57 Mo. 256, and *Baker* v. *Railroad Company*, 57 Mo. 265, depend upon other questions than those here involved. Those cases turned upon the rights of persons who had permitted railroad companies to

enter upon their lands, and, with knowledge of all the facts, had suffered the work to go on. The questions involved were as to waiver and acquiescence, and the grantor's power to revoke a license after the company had made valuable improvements upon the strength of it. *Evans* v. *Railroad Co.* 64 Mo. 453. It is obvious that the defendant cannot claim exemption from the operation of laws to which artificial as well as natural persons are subject, on the ground that it is a railroad corporation.

The judgment is reversed and the cause remanded, to be proceeded with in accordance with this opinion. All the judges concur.