JOHN H. BARRETT ET AL., Respondents, *v.* INDIANAPOLIS AND ST. LOUIS RAILROAD COMPANY, Appellant.

#### June 15, 1880.

1. Railroads doing business together, sharing profits, and sending freight over one or the other of the combined lines, at their pleasure or the shipper's request, may make themselves jointly liable to the shipper.

2. The question of agency is for the jury, upon all the evidence in the case, and is not concluded by the statements of the alleged agent.

3. Testimony tending to show that the defendant and other roads formed a "line," having a common office, in charge of a general agent, whose chief clerk was found at the office, and with whom a contract of shipment was made, is evidence of agency to go to the jury.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Affirmed.*

B. W. HANNA, for the appellant.

BROADHEAD, SLAYBACK & HAEUSSLER, for the respondent : "Where carriers on connecting routes form associations and arrangements for the purpose of carrying goods or parcels through the whole line, they are beyond question partners, and each is responsible for any loss or injury to goods which may happen, in whatever part of the line it occurs."— *Coates* v. *United States Express Co.*, 45 Mo. 238–241 ; *St. John* v. *Van Santvoord*, 25 Wend. 660 ; *Railway Co.* v. *McCarthy*, 6 Otto, 258.

HAYDEN, J., delivered the opinion of the court.

This is an action to recover the value of twelve hogsheads of tobacco, on the ground that the defendant contracted to convey the property from the towns of Brunswick and De Witt, in Missouri, in the city of New York, and that it never reached New York, and was lost to the plaintiffs. The petition avers that the defendant and certain other railroad companies constituted a continuous line from the towns named to New York, and at the time in question jointly carried on business, dividing the earnings. The verdict was for the plaintiffs.

The precise allegations of the petition and the weight of evidence are not here in question. The question is what the testimony tends to show. An examination of the testimony shows that the court below did not err in refusing to set aside the verdict as unsupported by evidence. It is contended by the defendant that no contract was made be-

tween the plaintiffs and any agent of the defendant for the transportation of goods. There is, however, testimony which clearly tends to show that Noyes was the general freight-agent in St. Louis of the defendant and of the railroad companies known as the Vandalia Line. One Smith was chief clerk under Noyes, and from the evidence it may fairly be inferred that Smith had authority from the defendant to make such contracts as he made with the plaintiffs. Indeed, from the testimony of the defendant's witness Simpson, who was the general manager of the companies (of which the defendant was one) which composed the "pool" in operation when this contract was made, it appears that Noyes, the general freight-agent, was allowed to impart authority to Smith, the general manager holding Noyes responsible in the premises. Smith was applied to by the plaintiffs, and, apparently to settle the rate, conferred with Bird, the agent of the St. Louis, Kansas City, and Northern Railway Company. What part Smith here took, and for whom he acted, were questions for the jury, on all the facts, and not to be settled by the say-so of Smith. It is clear there was evidence from which the inference might fairly be drawn that Smith, acting under authority of the defendant, made the contract for the transportation of the tobacco from Brunswick and De Witt, in Missouri, to New York, Bird, the agent of the other company, assenting and agreeing to the basis which involved the freight to be received by his road. The terms were fully agreed on and accepted by the plaintiffs. The evidence of Rankin, one of the firm, is clear and consistent. He considered that he was dealing — and upon the basis of his own testimony and that of the plaintiffs' other witnesses he certainly had a right to so consider — with the defendant, through its freight-agent, who had authority to make through contracts to New York for the transportation of freight. It is now contended, however, that whatever Smith did was done solely for the Pennsylvania Company, a corporation

which was the owner of two so-called fast-freight lines, the "Union Star" and "National," and of which corporation one Freeborn was the agent at St. Louis. But Rankin, a member of the plaintiffs' firm, who made the contract, had nothing to do with Freeborn, according to the testimony adduced for the plaintiffs. Smith was the chief clerk of Noyes, who, as stated, was the general freight-agent of the defendant and the Vandalia lines, and who was found at the office of these lines, which was the common office of the defendant and the Vandalia lines. It is true that Smith says that he was acting for the Vandalia lines and for the "Union Star" fast-freight line. The testimony goes for what it is worth, and cannot destroy the evidence tending to show that Smith was the agent of the defendant and authorized to act for it, or the testimony that proves the joint arrangement made between the defendant and the Vandalia lines, by which, under Simpson, the general manager, the corporations did business together, sharing profits and sending eastward-bound freight on one or the other of the combined lines, according to their pleasure or the shipper's desire. The effect of an arrangement similar in its material features to that which here existed has been declared by this court. *Wyman* v. *Railroad Co.*, 4 Mo. App. 35. Corporations, by such an arrangement, may make themselves jointly liable to the shipper; and here there was evidence tending to prove that the defendant was one of the two corporations which were thus liable.

Rankin made the contract while he was on his way from Missouri to Kentucky. The delivery of the tobacco was made to the St. Louis, Kansas City, and Northern Railway before any bill of lading was given or shown to him, and this was evidence that the goods were shipped under the contract as he made it. Though on the arrival of the tobacco at St. Louis a through bill to New York was, by the agreement, to be given by Smith, it is obvious that Smith had no right to insert any new term in the bill of lading, or to inter-

pose a new party to the contract. Smith was the authorized agent of the defendant, and as such the plaintiffs dealt with him. The plaintiffs looked to the defendant; and in point of fact, as the testimony of its foreman at East St. Louis for eastward-bound freight shows, this tobacco was transferred at East St. Louis by the agents of the defendant to its track, and thus sent away. That the car containing the tobacco was marked "Union Line" matters not; nor could the agent of the Pennsylvania Company, by sending a bill of lading signed by him as agent, rescind a contract already made and partly executed, and substitute a different one, with a new party to it, without the consent of the plaintiffs. It may be doubted whether there was any evidence of an assent such as would do away with the defendant's obligation, but, at all events, this issue was put to the jury by the court below on instructions which, if they were wrong, were wrong by being too favorable to the defendant. It does not follow that the previous contract was done away with. Neither the fast-freight "lines" nor the Pennsylvania Company were mentioned when Rankin made the contract, as he testifies; nor had the name of Freeborn been used. With the defendant's testimony to the contrary we are not concerned.

It is argued that the St. Louis, Kansas City, and Northern Railway Company were not authorized, as agents, to make a contract for the defendant, and in fact made none. This may well be. The action of Bird as such is material only as showing the manner in which defendant acted in the premises. Apart from any such action on Bird's part, and any question of authority in him or his company to bind the defendant, there is testimony sufficiently fixing the liability on the defendant. It was Smith who appealed to Bird and consulted him in order to be able to make arrangements with the plaintiffs for the transportation over the entire route. A common rate was then agreed upon, and was to be paid for the entire transportation; but upon this fact it was not necessary for the plaintiffs to insist. The question

before this court is, not as to the form of the petition, but as to facts essential to enable the plaintiffs to recover, and the tendencies of the testimony adduced for the plaintiffs.

It follows from what has been said that the demurrer to the plaintiffs' evidence was properly overruled. The first and third instructions offered by the defendant, and refused, ignore the agreement by which the defendant and the Vandalia Company, under joint agents, operated together and shared profits in common. What has been said above disposes of the fourth instruction. The fifth is argumentative, and improper in form. The instructions given by the court present the issues to the jury in a manner at least as favorable to the defendant as in law it could demand. Its theory of the case is fairly presented, and the finding against it has been upon points as to which the evidence conflicts. There is no reason why the verdict should be disturbed, and the judgment will be affirmed. All the judges concur.