M. W. WATSON, Respondent, v. HOOSAC TUNNEL LINE
COMPANY, Appellant.

February 13, 1883.

1. AGENCY — BROKER — CARRIER. — A shipper's broker has no implied
   authority, as such, to direct for the shipper, the delivery of goods held
   by a carrier subject to the shipper's order.

2. —— Evidence tending to show that the broker, with the shipper's knowl-
   edge and consent, held himself out as having authority to direct ship-
   ments for the shipper, makes the question of agency one for the jury.

3. ASSIGNMENT OF CAUSE OF ACTION. — A claim against a common carrier for
   loss of goods in transit is a cause of action arising on contract, and is
   assignable.

APPEAL from the St. Louis Circuit Court, BOYLE, J.
*Reversed and remanded.*

L. B. VALLIANT, for the appellant: The failure on the
part of a common carrier to carry and deliver goods in-
trusted to it for carriage is a tort. — *Levering* v. *Union T.
& I. Co.*, 42 Mo. 88; *Thurman* v. *Wells*, 18 Barb. 500;
*Emigh* v. *Railroad Co.*, 4 Biss. 114; Bliss on Code Pl.,
sect. 14; *Sawyer* v. *Railroad Co.*, 27 Vt. 370. And the
right of action is not assignable. — *Thurman* v. *Wells*, 18
Barb. 500; *Smith* v. *Kennett*, 18 Mo. 154; *Wallen* v.
*Railroad Co.*, 74 Mo. 521; 1 Pars. on Con. (5th ed.) 225,
226; Rev. Stats. 1879, p. 502, sect. 3462. Delivery to a
generally recognized agent discharges the carrier. — *Wilson
Machine Co.* v. *Railroad Co.*, 3 Mo. App. 578.

M. W. WATSON, *pro se.*

BAKEWELL, J., delivered the opinion of the court.

This is an action against defendant as a common carrier,
for damages for the loss of a car-load of bran delivered
to it by the assignor of plaintiff, for shipment to Provi-
dence, Rhode Island. The verdict and judgment were for
plaintiff.

It appears from the evidence, that, on August 13, 1880,
Hickey was doing business in St. Louis, Missouri, under

the name of Hickey & Co., and one Aldrich was doing business in Worcester, Massachusetts, under the name of C. D. Aldrich & Co. At that date, Hickey and Aldrich entered into a written agreement by which Aldrich was appointed the broker of Hickey for the sale of bran throughout New England. On November 17, 1880, whilst these relations existed between Hickey and Aldrich, Hickey delivered to defendant at St. Louis, to be carried over the connecting roads composing defendants' line, and delivered at Providence, Rhode Island, fourteen tons of bran, then worth at Providence $22.50 a ton. This bran made a car-load. The instructions to defendant were to ship to "shipper's order." No bill of lading was issued at the time, but afterwards, on November 20th, defendant gave to Hickey a bill of lading which set forth the terms of the verbal agreement. This bill of lading set forth the consignee and marks as follows: "Shippers' order. Notify C. D. Aldrich & Co., Providence, R. I." Upon receiving the bill of lading, Hickey drew a draft upon Blum & Sons, of Providence, indorsed the bill of lading to them, attached the draft to the bill of lading, and forwarded them for collection to a bank in Providence, which returned the draft and bill to Hickey with the information that the bran had not been received in Providence. On the arrival of the car-load of bran at Worcester, Aldrich was notified by the Boston, Bane and Gardner road of its arrival. This road was one of the railroad companies comprising defendant's fast freight line. Aldrich at once went to the railroad office and directed that this car should be forwarded to William M. Harris, at Providence. Aldrich had previously been notified by Hickey that cars containing bran would arrive, and had made an agreement for sale of bran with Harris, in pursuance of which Aldrich directed the car to be forwarded to Harris. Harris paid Aldrich for the bran, but it does not appear that Aldrich paid Hickey, though the amount was credited to Hickey on the books of Aldrich.

Kimball, the freight clerk of the Boston, Bane and

Gardner road, stated that his business was to take charge of the station at Worcester and attend generally to the directing and forwarding of freight in the absence of Mr. Blackmer. The car-load in question, directed " Shipper's order. Notify C. D. Aldrich & Co., Providence, R. I.," came in, and stopped in company's yard. Mr. Aldrich came to the office, and wanted the car billed to William M. Harris, of Providence, Rhode Island. Aldrich had come in, in consequence of a notification from the witness in regard to the business. They could not obey Mr. Aldrich's directions without breaking orders. Witness referred Aldrich to Blackmer. Blackmer told the witness to bill the car to Providence as it was billed to them, with this addition, " For William M. Harris." The witness did so bill it. Frequently, and just previous to this time, Aldrich had dealings with the road in regard to the forwarding of freight received, representing himself as agent of Hickey & Co. Witness was shown a card and circular, which he recognized as like those circulated by Aldrich. He recognized the card as like those often used by Aldrich in giving orders for delivering and forwarding cars, by writing the orders on the back of the cards, and leaving them with the witness. Just prior to this time, other cars from Hickey & Co., consigned in a similar manner, came on, and were forwarded by the witness under Aldrich's direction in a manner similar to that stated above by the witness.

Blackmer, the local freight agent of the B., B. & G. road at Worcester, testified that the car in question consigned by Hickey & Co. to " Shipper's order. Notify C. D. Aldrich & Co., Providence, R. I.," came on ; that Aldrich came and desired the car billed to William M. Harris, Providence, Rhode Island. The witness says : " I told him we could not do it in that way without the bill of lading, but I would bill it to Providence in the same manner that it was consigned to us. He asked me if I would notify the agent at Providence that the car was for William M. Harris. I told him that I

would.   I gave orders to my clerk, Mr. Kimball, to forward the car as it was billed to us, and to mark on the way bill, 'For William M. Harris.' "   Before that time Aldrich frequently had dealings with the road in regard to forwarding freight received by it, representing himself as agent for Hickey & Co. in regard to such matters.   The witness never saw the circular of Aldrich, but cards similar to that in evidence had been several times handed to the witness by Aldrich, with a memorandum on the back concerning the disposition of freight.

The circular referred to above, was as follows : —

" Circular.   To the New England trade.   Having established an eastern agency for the taking and forwarding of orders for flour, grain, and feed, and placed the same in the hands of Messrs. C. D. Aldrich & Co., No. 48 Mechanic Street, Worcester, Massachusetts, we are prepared to make and receive offers through them for grain and the milling products of our markets, making bran a specialty.   We feel with the superior advantage we have for handling and forwarding merchandise, we can insure prompt shipments and quick transit, thus avoiding many vexatious delays, at times when they are most wanted.   We guarantee our goods as represented ; and will settle promptly all just claims with proper vouchers attached.   James Hickey & Co.   St. Louis, Sept. 14, 1880."

The card seen by both preceding witnesses, and referred to in their testimony, is as follows : —

" James Hickey & Co.,

Successor to Hickey, Cullem & Co.

Flour, Grain, and Feed.

Bran a specialty.

| No. 22 N. 2d Street, | 48 Mechanic Street, |
| --- | --- |
| St. Louis, Mo. | Worcester, Mass. |
| *References:* | *Represented by* |
| E. O. Stanard, Eagle Steam Mills. | C. D. Aldrich & Co. |
| Geo. Bain, Atlantic Milling Co. | Worcester, Mass." |

On August 26, 1880, Hickey & Co. wrote to Aldrich in answer to a letter of his enclosing the card and circular, saying:—

"Now, referring to the circular and card you propose to distribute, we think it a good scheme, and don't see that it can be altered to any advantage. We are about removing our office and can not give you the name of street and number for a day or two. Will then return you the circular and card."

The court gave the following instruction at the instance of plaintiff:—

"The court instructs the jury, that any delivery of the car-load of bran mentioned in plaintiff's petition, without the written order or assent of Hickey & Co., the shippers, or the surrender of the bill of lading issued by defendant in this case to said Hickey & Co. for said car-load of bran, was without authority and constitutes no defence to this action."

Of its own motion, the court instructed the jury, that if they believe from the evidence that defendant received the car-load of bran in question to be transported and delivered at Providence, Rhode Island, to the order of James Hickey & Co., and that defendant failed to deliver the same, and that Hickey & Co. have assigned their claim to plaintiff, then the jury will find for plaintiff.

The defendant asked many instructions which were refused. Amongst these, were instructions to the effect that, if Aldrich was the agent of Hickey, or with Hickey's knowledge and consent was representing himself as his agent in the matter of receiving and disposing of bran shipped by Hickey & Co. to New England, and that the bran in question was delivered to Aldrich, or to Harris at the request of Aldrich, the plaintiff cannot recover.

Delivery to Hickey himself, or to the general agent of Hickey authorized to represent Hickey himself, would have discharged the carrier so far as any claim of Hickey for the

loss of the goods could go.    *Wilson Sewing Machine Co.*
v. *Railroad Co.*, 3 Mo. App. 578.

That the authority of Aldrich under the written contract
was not that of a general agent, but merely that of a broker,
is not decisive of the case, if there was evidence tend-
ing to show that Aldrich, with the knowledge of Hickey,
was holding himself out to defendant's agent at Worcester
as the general agent of Hickey.    If Aldrich through the
act of Hickey was enabled to hold himself out as posses-
sing authority from Hickey which Hickey had not intended
to grant to him, Hickey might be estopped to set up the
written limitation of Aldrich's powers as against persons
who had no knowledge of this agreement and who in good
faith believed Aldrich to have the powers which he claimed.
In view of the card circulated by Aldrich with the knowl-
edge and consent of Hickey, we think it should have been
left to the jury to say whether or not the agents of the
connecting road at Worcester had good reason to believe,
and did believe from representations of Aldrich authorized
by Hickey, that Aldrich had full authority from Hickey as
his general agent to receive these goods or to give orders
to whom they should be delivered at Providence.    If the
jury found for defendant as to this, then, as the evidence is
undisputed that, by the direction of Aldrich, the agent at
Providence was directed that the goods were for Harris,
and as Harris got the goods by the direction of Aldrich,
and paid Aldrich for them, no reason appears why defend-
ant should be held to make good to Hickey a loss which
arises from the misfeasance and non-feasance of Aldrich,
who, although not the general agent of Hickey, was allowed
by Hickey to circulate throughout New England a card cal-
culated to lead traders to believe that Hickey had two
places of business, one at St. Louis, and another at
Worcester, Massachusetts, at which place he was repre-
sented generally by Aldrich.

We think that the card in question is fairly susceptible of this meaning, and that it was calculated to deceive as to the real relations between Hickey and Aldrich. If Aldrich had been merely the broker of Hickey, and nothing more had appeared as to this, plaintiff's case would have been clear enough. But, that, by agreement between Hickey and Aldrich, the latter was to act merely as the broker of the former, is immaterial, if it further appears that, with the knowledge of Hickey, Aldrich held himself out as having authority from Hickey which Hickey had not expressly given to him, and was thus, through the carelessness of Hickey, enabled to impose himself upon the defendants as having full powers in the matter of shipper's orders.

We have no doubt that the claim against the corporation, if any such exists, was assignable. As to this we adhere to what has been said in the former opinion in this case.

As to sections 556 and 561 of the Revised Statutes, they are not to be interpreted to mean that, when goods are consigned to " Shipper's orders," and the order of the shipper or his duly authorized agent, though not in writing, is obeyed by the carrier, the carrier is to be liable to the shipper if the agent disobeys secret instructions of the shipper whereby the goods or their proceeds are lost to the shipper, because the agent's orders are not given in writing. But, though counsel for respondent refers to these sections, and the instruction given at his instance was based, he says, upon them, it appears from the evidence that, at the time that the shipper's order was given by Aldrich claiming to act as agent of the shipper, there had been no bill of lading issued. It is difficult to see, therefore, how, in any view of these sections, they can be held to apply in the present case.

We think that the judgment should be reversed and the cause remanded. It is so ordered. All the judges concur.