## J. D. SHEWALTER, Appellant, v. MISSOURI PACIFIC RAILWAY COMPANY, Respondent.

**Kansas City Court of Appeals, June 4, 1900.**

1. **Common Carriers: CARRYING BEYOND LINE: LIABILITY.** A common carrier may contract to carry beyond its own line and several carriers agreeing to carry over their lines for a given price are jointly and severally liable to the shipper the same as for separate contract on their respective lines.

2. ———: ———: PRIVITY. If a traffic arrangement exists between two or more carriers, the connecting carrier receiving goods from the contracting carrier becomes a privy to the contract with the shipper, but without such traffic arrangement no such privity will be implied and the connecting carrier who received the goods independent of the contract is not responsible for the wrongdoing of the contracting carrier and may change its local rate.

| | |
|---|---|
| 84 | 589 |
| 87 | 334 |
| 84 | 589 |
| 98 | 6424 |
| 84 | 589 |
| 102 | 6354 |

3. ———: ———: CONVERSION: FREIGHT CHARGES. Where the contracting carrier is not the agent of the connecting carrier the latter has a lien for its charges and its refusal to deliver the goods until the charges are provided for will not amount to conversion; and the shipper on demanding his goods must show they are free from the lien.

4. ———: REFUSAL TO DELIVER GOODS: CONVERSION. A carrier refusing to deliver goods on demand is *prima facie* guilty of conversion. This may be rebutted since the idea of property is the essence of conversion and the intention to deprive of property must be present and a mere retention as a security for its carriage is not sufficient.

5. ———: ———: LIEN: CONVERSION. A carrier on demand to deliver goods purposing to do so provided the shipper will agree to pay a disputed freight bill if found correct, is not guilty of conversion.

6. ———: INSTRUCTION: COVERING WHOLE CASE: KNOWLEDGE OF PAYMENT. Instructions relating to the duty of a carrier to deliver goods on demand where the freight had been paid to the contracting carrier are reviewed and held to be faulty in excluding the theory of the defendant as to knowledge of the payment while attempting to cover the whole case.

7. ———: ———: ———: ———. Other instructions reviewed and found to be conflicting.

8. ———: AGENCY: JURY QUESTION: INSTRUCTION. Whether carriers are agents for each other in contracting freight is a question for the jury under the instructions of the court.

9. ———: REFUSAL TO DELIVER FREIGHT: CONVERSION: TIME OF ACTION. A connecting carrier on the ground that its charges were unpaid refused to deliver freight on the fourth of December and the petition alleged said date as the time of conversion. On the fifth the contracting carrier paid the charges, but on the same day the shipper brought suit for conversion. Held, an instruction precluding the defense that at the time of the refusal to deliver the carrier acted in good faith and was unaware of the agreement between the contracting carrier and the shipper or of the payment of its charges, was properly refused.

10. Appellate Practice: INSTRUCTIONS: COMMON VICE. An appellant can not complain of an instruction when his own contains a like vice.

11. **Common Carriers: REFUSAL TO DELIVER GOODS: TRAPPINGS OF STOCK: ISSUE: APPELLATE PRACTICE.** A judgment in favor of a common carrier sued in conversion for refusing on demand to deliver certain horses will not be interrupted on the ground that certain small articles—trappings of the horses—were erroneously overlooked by the trial court, when no such issue was made at the trial or evidence offered or any demand made therefor apart from the demand for the horses.

Appeal from the Lafayette Circuit Court.—*Hon. Richard Field,* Judge.

AFFIRMED.

*S. N. Wilson* and *J. D. Shewalter* for appellant.

(1) "The doctrine now is that any taking or assumption of the right to control or dispose of property constitutes a conversion. Any wrongful act which negatives or is inconsistent with the plaintiff's rights is *per se* a conversion." Allen v. McMonagle, 77 Mo. 478; Warnick v. Baker, 42 Mo. App. 439, 442, and list of authorities; Moore v. Simms, 47 Mo. App. 182; Norman v. Horn, 36 Mo. App. 419, 422; Williams v. Wall, 60 Mo. 318, 321, 322; State to use of Wolff v. Berning, 74 Mo. 87; Bank v. Metcalf, 40 Mo. App. 494. (2) That the party acted in good faith is no defense. "The element of wrongdoing is not necessary to the maintenance" of conversion. Ess v. Griffith, 128 Mo. 50, 62; Waverly & Co. v. Cooperage Co., 112 Mo. 389; Williams v. Wall, 60 Mo. 318, on p. 322; Ireland v. Horseman, 65 Mo. 511. (3) Where defendant comes lawfully into possession of the property, his refusal, on demand, to give up the property (unless he has a valid subsisting lien or claim) is a conversion. Norman v. Horn, 36 Mo. App. 419, 422; House v. Brooks, 52 Mo. App. 364; Nanson v. Jacobs, 93 Mo. 331, 340. (4) Therefore the court committed error in giving instructions numbers 1, 3 and 8 for the defendant and in refusing to give numbers 10 and 12 as asked by plaintiff, and in changing number 1 asked by plaintiff and giving it in its changed form. (5) One railroad may contract to carry

freight the entire route even though a part of the journey is over another road, and such contract may be made by the general freight agent, or even a station agent, when his authority may be inferred from a course of dealing.  White v. Railway, 19 Mo. App. 400; Machine Co. v. Railway, 70 Mo. 672; Halliday v. Railway, 74 Mo. 159; Loomis v. Wabash, 17 Mo. App. 340.   (6)   It is well settled that in a case of a through contract the two roads are either partners in the transaction, or are agents, the one of the other.   Halliday v. Railway, 74 Mo. 162; Coats v. Express, 45 Mo. 238; Baker v. Railway, 34 Mo. App. 112; Railroad v. Pratt, 22 U. S. 123; Railroad v. McCarthy, 96 U. S. 258; 5 Tomp. on Corp., sec. 3,871; 2 Red. on Railroad, sec. 180, p. 120; Lawson on Carriers, secs. 235, 238 and note p. 346; and note p. 349; Hutchinson on Carriers, secs. 110, 160, 162 and 166. (7)   The payment of freight for the entire journey, or the direction of the goods to a particular place beyond the line of the first carrier, is *prima facie* evidence of a contract for through carriage, and casts the burden upon the defendant. Dimmitt v. Railroad, 103 Mo. 441; Coats v. Express Co., 45 Mo. 240; Lawson on Carriers, sec. 239, also p. 360 and 361.   (8)   A subsequent ratification is, in all cases, equivalent to antecedent authority, and the act of ratification relates back to the date of the contract.   Turner v. Chillicothe, 51 Mo. 510; Ferris v. Thaw, 72 Mo. 447; Middleton v. Railroad, 62 Mo. 579; Cravens v. Gillilan, 63 Mo. 28; Bank v. Gay, 63 Mo. 39.   (9)   It is error to give conflicting instructions.   Evers v. Shumaker, 57 Mo. App. 454; Redpath v. Lawrence, 42 Mo. App. 101; Martinowsky v. City of Hannibal, 35 Mo. App. 70; Stone v. Hunt, 94 Mo. 475; Nickols v. Jones, 32 Mo. App. 657.

*Wm. S. Shirk* for respondent.

(1)   To constitute a conversion, there must exist an intent on the part of the taker, to take to himself the property

in the goods, or to deprive the owner of it. "The idea of property is of the essence of a conversion." Niemetz v. The Ass'n, etc., 5 Mo. App. 59, 63, 64; s. c., 3 Rob. Prac. 549; Nanson v. Jacob, 93 Mo. 331, 340. (2) Now, in the case at bar, there was (a) no wrongful taking. That will be admitted. (b) Nor should it be contended that there was any intention to appropriate, or attempt, or intention to take to the defendant, the property in the horses. (c) There was a refusal to give up possession on demand, but refusal to deliver on demand is not of itself a conversion—it is only evidence of a conversion, and is open to explanation. Thompson v. Rose, 16 Conn. 71; Sturgis v. Kieth, 57 Ill. 451; Beckman v. McKay, 14 Cal. 250; Dietus v. Fuss, 8 Md. 148. In the case at bar, the defendant's refusal to deliver was fully explained. (3) Respondent had the right to hold the stock until the full local rate from Sedalia, Missouri, to Lexington was paid. Wells v. Thomas, 27 Mo. 17; Moor v. Henry, 18 Mo. App. 35 loc. cit. 41. (4) But the respondent had the right for another reason to hold the horses longer than it did. Appellant could not produce his bill of lading, or stock contract. Respondent was not bound to deliver the stock until the appellant produced his bill of lading, or satisfactorily accounted for its absence, or gave some security or assurance that it would not turn up transferred to some innocent purchaser for value. Basa v. Glover, 1 Am. and Eng. Ry. Cas. 277; Railway v. Bank, 35 Am. and Eng. Ry. Cas. 556; s. c., 8 Sup. Ct. Rep. 266; s. c., 123 U. S. 727; Bank v. Railway, 132 Mo. 492. (5) The refusal to deliver must be unqualified, and absolute, to constitute conversion. If the refusal to deliver is qualified, and such qualification is reasonable and made in good faith, it is no evidence of a conversion. Loeffler v. Packet Co., 7 Mo. App. 185; McEntee v. The Steamboat, 45 N. Y. 35; Bailey v. Railway, 80 N. Y. 353; Hutch. on Car., sec. 344; latter part of p. 275, and authorities

cited; Hutch. on Car., sec. 408; Butler v. Jones, 2 So. Rep. (Sup. Ct. Alabama), 300. This latter case is very much in point. (6) Certainly no one disputes the fact that a railway company may contract to carry beyond its line. But unless such contracting carrier has authority to bind a connecting carrier by its contract, or such connecting carrier receives the property for shipment under the contract made by the contracting carrier, the connecting carrier is not bound by such contract. This is shown by appellant's own authorities cited. Halliday v. Railway, 74 Mo. 159; Coates v. Express Co., 45 Mo. 238.

SMITH, P. J.—The facts which the evidence tends to prove may be stated in this way:

The Missouri, Kansas & Texas Railway Company operates a line of railway from the city of Houston, in the state of Texas, to the city of Sedalia, in this state. It has no line between the last named city and the city of Lexington, also a city in this state. The defendant operates a railroad from Sedalia to Lexington. The plaintiff entered into a contract of affreightment with the Missouri, Kansas & Texas Railway to carry a mare and three colts from the said city of Houston to the city of Lexington, paying the freight charges for the entire way. The latter carried the plaintiff's animals to Sedalia, where it delivered the same to the defendant with a transfer sheet which stated the point from where the plaintiff's animals had been shipped, the point of destination and that the freight had been paid to Sedalia. The defendant thereupon carried the plaintiff's animals to Lexington and on the arrival thereof notified plaintiff of the fact and that the freight charges due thereon was twelve dollars and twenty-five cents, the same being the defendant's local rate between said last named points. The plaintiff refused to pay the charges so demanded, claiming that he had paid the Missouri, Kansas & Texas Railway the freight charges from Houston to

Lexington. The defendant declined to deliver the plaintiff his animals unless its charges were first paid, or, before it had time to investigate the truth of the plaintiff's representation.

On the day of the arrival of the plaintiff's animals, and while the defendant was engaged in endeavoring to ascertain whether the plaintiff had paid to the Missouri, Kansas & Texas Railway the freight charges for the entire way, the plaintiff, after demand for delivery and refusal, brought this action for conversion. It is proper to further state in this connection that the defendant's agent offered to deliver the plaintiff's animals if he would agree to pay its charges in the event it should turn out, on investigation, that the same had not been paid to the Missouri, Kansas & Texas Railway, which offer was by plaintiff rejected. It does not anywhere appear from the evidence presented by the bill of exceptions that the defendant, at the time of the receipt of the plaintiff's animals, was advised that the Missouri, Kansas & Texas Railway Company had entered into a contract with the plaintiff to carry the same to Lexington, or that the plaintiff had paid the freight charges from the initial point to that of the destination. The plaintiff did not produce the contract or bill of lading received of the Missouri, Kansas & Texas Railway, the same having been lost by him. It appears that when the car which carried the plaintiff's animals reached Sedalia the defendant's agent there changed the way bill by striking therefrom Lexington as the point of final destination and inserting in lieu thereof Sedalia, but of this the defendant does not appear to have had any knowledge. There was a trial and judgment for defendant to reverse which plaintiff prosecuted his appeal.

The first, in the series of errors which have been assigned by plaintiff for a reversal of the judgment, relates to the action of the trial court in the giving of the defendant's instructions numbered one, three and eight and in refusing those num-

bered ten and twelve, and modifying number one, requested by plaintiff. The court, by the defendant's first instruction, just referred to, declared that, in order to constitute a conversion of a chattel by a party taking it into his possession, or by refusing to deliver it to the rightful owner, there must be an intention on the part of such party at the time of such taking or detention to take to himself the property therein, or, to deprive the owner thereof of the property therein. And by the defendant's third, the jury were told further, in substance, that even though the plaintiff contracted with the Missouri, Kansas & Texas Railway Company for the carriage of his animals over its own line from Houston to Sedalia and from there to Lexington over that of defendant, and that plaintiff prepaid to the Missouri, Kansas & Texas Railway Company the charges for the entire carriage, yet if after the arrival of plaintiff's animals at Sedalia the Missouri, Kansas & Texas Railway Company turned the same over to the defendant to complete the carriage, with the information that the charges had been paid to Sedalia and that defendant had at that time no knowledge to the contrary, then it (defendant) had a right to demand its legal charges for the carriage by it of plaintiff's animals, and was not bound to deliver them until its said charges were paid, or until it had an opportunity to ascertain whether its charges had in fact been paid, and that unless the defendant's agent at the terminal station did not intend, at the time the demand for the payment of the charges was made, to convert the plaintiff's animals to his own use, or to the use of the defendant, but only intended to hold the same for collection for the said charges thereon, or until it could definitely ascertain whether such charges had been paid for the entire carriage, then defendant was not guilty of conversion, etc. And by the defendant's eighth, the jury were further told that if the original detention of the plaintiff's animals by defendant was without

any intention of converting them to its use, as defined by the first instruction given for it, then the subsequent retention of plaintiff's said animals, after plaintiff had refused to receive them, did not constitute a conversion.

It seems to us that under the pleadings and evidence these instructions very fully and fairly submitted the issues in plaintiff's behalf. It is conceded that a common carrier may contract to carry beyond the termination of its own line. It is quite well settled that if several common carriers, each having its own line, associate and form what to the shipper is a continuous line, and contract to carry goods through for an agreed price, which the shipper pays in one sum and which the carriers divide among themselves, then they are jointly and severally liable to the shipper, with whom they have contracted, for a loss taking place on any part of the whole line. And it is, too, well settled that incorporated railway carriers have authority to contract for the carriage of persons and property beyond their own lines, and beyond the limits of their respective states. Wyman v. Railway, 4 Mo. App. 35, and cases there cited. And a railway carrier entering into such contract incurs the liability that would attach to it had it contracted solely to carry over its own line. Cherry v. Railway, 61 Mo. App. 303, and authorities there cited; Baker v. Railway, 34 Mo. App. 112; Coats v. Express Co., 45 Mo. 240.

Halliday v. Railway, 74 Mo. 159, cited by plaintiff, was where the connecting carrier received the goods from the contracting carrier to be carried in pursuance of the contract of the shipper with the latter, and it was held that the law will imply from such circumstance sufficient privity between the shipper and the connecting carrier to enable the shipper to maintain an action on the contract against such carrier. But in this case there is no evidence whatever tending to prove that there existed between the defendant and the Missouri, Kansas & Texas Railway Company any traffic arrange-

ment, or any joint agreement or association or partnership for the formation of a continuous line or to carry goods through for an agreed price to be divided between them. And since, as previously stated, it does not appear that the defendant received the plaintiff's animals from the Missouri, Kansas & Texas Railway Company in pursuance of the contract of the latter with plaintiff, or with the knowledge that such contract had been entered into, or that the plaintiff had prepaid the charges for the entire carriage, it is quite difficult to understand how the defendant can be held responsible for any wrongful act or negligence of the Missouri, Kansas & Texas Railway Company in respect to the carriage of the plaintiff's animals.     It would therefore seem that the carriage over the defendant's line should be considered without reference to the contract entered into between the plaintiff and the Missouri, Kansas & Texas Railway Company. The evidence tends to show that the latter carrier turned plaintiff's animals over to the former for carriage with no other information than that such animals were not subject to any previous freight charges and were to be carried to Lexington.    Under these conditions it is quite obvious that the defendant was authorized to charge and collect its local rate for such carriage.

There is nothing disclosed by the evidence showing that the Missouri, Kansas & Texas Railway Company was, in respect to the receipt by it of the entire carriage, the agent of the defendant.   If the defendant had been authorized by the contract entered into by plaintiff with the Missouri, Kansas & Texas Railway Company and the prepayment of the entire carriage by the plaintiff, then the plaintiff would unquestionably have been entitled to possession on demand. Accordingly we conclude that the refusal to deliver unless payment of the charges was first made would not constitute a conversion.   The defendant had a lien, or, which is the same thing, the right to withhold the possession until such

charges were paid by the plaintiff. Although plaintiff had paid the entire carriage, yet as he did not accompany his demand with a production of the contract, or other evidence of payment, we can not think that his assertion of the fact that he had paid the entire carriage was, as a matter of law, conclusive on the defendant, or, that a refusal to deliver, after such demand, was of itself a conversion or evidence from which the existence of an intent on the part of the defendant to take the property in the plaintiff's animals to itself, or to deprive the latter of it.

This case is to be distinguished from those to which our attention has been called, where there was a wrongful taking or assumption of the right to sell or dispose of the property, or where the bailee wrongfully sells or disposes of the bailment, or where there is a denial of the owner's title, and a refusal to deliver, accompanied with an assertion of the adverse title, and the like. When the plaintiff made his demand the defendant refused, stating the grounds therefor, viz.: that it had an undischarged lien on the property, or a right to withhold possession until such lien was discharged. Undoubtedly, in a case of this kind, a demand and a refusal *prima facie* would establish a conversion, but this *prima facie* case may be rebutted or explained by proof that the carrier claimed to have and did have, at the time of the refusal, a lien on the property for carriage, and that the possession was withheld on that ground. The cases cited by defendant fully illustrate this statement of the law.

A conversion, in a legal sense, consists either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it in exclusion or defiance of the plaintiff's right, or in withholding the possession from plaintiff under a claim of title, inconsistent with his own. Sparks v. Purdy, 11 Mo. 219; Nanson v. Jacob, 93 Mo. 331; Masterson v. Railway, 5 Mo. App. 64, and

cases there cited. The idea of property is the essence of conversion, and if the defendant did not in the present case intend to deprive the plaintiff of his property in the subject of the carriage but detained it only as a security for the payment of its carriage, then it was not guilty of conversion.

It is not disputed that defendant lawfully came into possession of the plaintiff's animals, and when it refused to deliver such possession on demand, if it did not know that its charge for carriage had been prepaid to the preceding carrier for it, no reason is seen why it was not authorized to detain such animals for such reasonable time as would enable it to ascertain whether or not it was true, as the plaintiff asserted, that he had prepaid such charges, and that if it did so this was not a conversion within the principle of the rules to which we have adverted. The contracting carrier, on delivering the plaintiff's animals to the defendant should have advised the latter of its contract with the plaintiff and that he had prepaid the entire carriage; but as it did not take this course, it was the duty of the plaintiff, when the defendant refused to deliver possession without payment of its charges for carriage, to have produced the contract and to have thereby showed that the charges had been paid; and if such contract were lost or could not be produced by him for any reason, then the defendant had a right to resort to other sources of information and in the meantime to withhold possession.

If when the plaintiff demanded possession, the defendant's agent, in good faith, proposed to him that he would deliver possession of the animals if he would agree to pay the defendant's charges—which plaintiff claimed had been paid—if it should later on turn out that the same had not been paid, we think that this was a qualification of the defendant's refusal to deliver which the jury were authorized to take into consideration in determining the issue. The plaintiff by his said refused instructions numbered ten and twelve sought a submission of the case to the jury upon the

theory that if the defendant refused to deliver possession for the sole reason that its charges for carriage had not been paid, that this constituted a conversion. The plaintiff's insistence is, that since he paid the entire carriage to the Missouri, Kansas & Texas Railway Company that this bound the defendant, whether or not it received the plaintiff's animals in pursuance of the said contract made by the former with the plaintiff to complete the carriage, or whether or not it knew that the said charges for carriage which it was entitled to receive had been paid, or without regard to the defense interposed by the defendant's answer. These instructions in their enunciation were at variance with those given for the defendant. They were upon the whole case and so framed as to exclude from the consideration of the jury the evidence of the defendant tending to show he had no right to recover, and they were for that reason improper. Clark v. Hammerle, 27 Mo. 55; Fitzgerald v. Hayward, 50 Mo. 516; Griffith v. Conway, 45 Mo. App. 574; Voegeli v. Granite Co., 49 Mo. App. 643.

The third instruction given for the plaintiff, which told the jury that if his demand for the possession was refused that then the burden of proof rested on defendant to show that it had a valid and subsisting lien upon plaintiff's animals, and a right to hold the same until the lien was discharged, and if it had not so shown, but at the time of the commencement of the suit held possession, then the finding should be for plaintiff, was extremely favorable to the plaintiff. Accordingly, we are unable to find any fault with the action of the court with respect to the giving, refusing or modifying of the instructions referred to at the outset.

The plaintiff further contends that its first and third instructions are in conflict with those given for defendant—two, three, four and six. The plaintiff's said first declared that if he made a contract with the Missouri, Kansas & Texas Railway Company to carry his animals from Houston

to Lexington and paid the entire carriage and the same was accepted that this was a valid contract. His third related to the lien claimed by defendant and has already been quoted. These instructions assert that if the facts hypothesized therein were found by the jury that then the jury must conclude there was a valid contract as between plaintiff and the said Missouri, Kansas & Texas Railway Company. The defendant's said instructions declare in effect that even if the Missouri, Kansas & Texas Railway Company did enter into such contract with plaintiff that it was not binding on it unless it had knowledge of such contract and that the entire carriage was prepaid by the plaintiff. Since there was no agreement or partnership existing between the Missouri, Kansas &. Texas Railway Company and the defendant for the carriage of freight over their lines as a continuous line, and for a division of the carriage received from the shippers, it is impossible to see how the Missouri, Kansas & Texas Railway Company could by a valid contract with the plaintiff bind the defendant unless with the latter's consent or acquiescence. And certainly there could be neither the one or the other without the latter first had knowledge of such contract. If the defendant became a party to the agreement between plaintiff and the Missouri, Kansas & Texas Railway Company and thereby bound itself by the stipulations therein and refused to deliver the possession of plaintiff's animals without payment to its agent by plaintiff of its charges for carriage, then there was a conversion; but if it had no knowledge of the contract and of the payment of its charges by plaintiff to the Missouri, Kansas & Texas Railway Company, it was not bound by such contract and it had the right to withhold possession until its charges for carriage were paid by plaintiff. And when the plaintiff asserted the contract and payment of the entire carriage, it had the right, if ignorant thereof, to inquire into the fact before parting with the security which the law gives a carrier for its charges for carriage. There

was, as we think, no serious conflict in the instructions last referred to.

It is further objected by plaintiff that the defendant's second and fourth instructions submitted a question of law to the jury. These instructions submitted to the jury the question whether or not the Missouri, Kansas & Texas Railway Company had authority to bind defendant by its contract with plaintiff and to receive for it its freight charges. Whether the Missouri, Kansas & Texas Railway Company was the agent of the defendant in contracting for the carriage over the latter's line of railway was a question of fact, which it was proper to leave to the jury to determine. Middleton v. Railway, 62 Mo. 579; Barrett v. Railway, 9 Mo. App. 226; Watson v. Tunnel Line, 13 Mo. App. 263.

The plaintiff further objects that the court erred in refusing its eleventh instruction which told the jury that if it found from the evidence that on the fifth of December, 1895, the Missouri, Kansas & Texas Railway Company paid defendant the freight claimed by the latter and it was accepted with a full knowledge at the time that the former had contracted to deliver the freight at Lexington and had accepted payment therefor, then such latter ratified the said contract and such subsequent ratification is as if such latter had given such former full authority to make said contract and could not be heard to deny the authority of the former to do so. The alleged conversion took place on the fourth of December. This suit was begun on the next day—December 5. The effect of the instruction would be to preclude the defendant from showing in its defense that at the time it refused to deliver the plaintiff's animals unless he would pay its charges for carriage, it acted in good faith and was unaware of the existence of said contract or the payment of its said charges by plaintiff to the Missouri, Kansas & Texas Railway Company. If it had been alleged, as it was not, that the conver-

sion took place after the ratification, then the effect of such ratification would, no doubt, have been to estop the defendant to deny the authority of the Missouri, Kansas & Texas Railway Company to bind it by said contract. But we think it is otherwise in a case like this where there is no evidence whatever tending to prove that the defendant by withholding possession, intended to take to itself the property in the animals or to deprive plaintiff of it.

The further claim is made by plaintiff that the defendant's instructions were erroneous in leaving it to the jury to determine whether it acted in good faith in demanding the carriage of plaintiff. It is sufficient answer to this to say that the plaintiff's second instruction contains a like vice, if it be such—which we do not think is the case.

The plaintiff has filed what we suppose is intended as a supplement to his original brief, in which it is suggested that the defendant has withheld certain "small articles" which were shipped along with his animals and for the carriage of which no charge was made, and for that reason the judgment should be reversed. No issue in respect to these articles seems to have been made at the trial. There was no evidence whatver that the plaintiff, apart from his animals, demanded these "small articles," or that the defendant withheld them for any purpose. They were not referred to in any contract or expense bill. They seem to have been regarded in the nature of trappings or caparisons. They went with the plaintiff's animals like the halter and bridles securing such animals, and the right to withhold the possession of the animals extended to the small articles referred to.

We are unable to discover that the court committed any error at the trial that was prejudicial to the plaintiff on the merits, and accordingly the judgment must be affirmed. *Ellison, J.*, concurs; *Gill, J.*, absent.